# LETELLIER-PHILLIPS PAPER CO. et al. v. FIEDLER, et al.—222 S. W. (2d) 42.

Jackson. March 2, 1949.

Petition for Certiorari denied by Supreme Court, June 18, 1949.

138

Robert M. Nelson, Ferber S. Floyd, both of Memphis, for appellants.

Feuerstein, Fleet & Feibelman, of Memphis, for appellees.

SWEPSTON, J. This is an appeal in error by dedefendants below from an adverse verdict and decree for $24,060.74 after a jury trial in the Chancery Court.

The suit is on account for merchandise sold and delivered and the essential question in the trial below was whether there was partnership liability or corporate liability, the partners having operated as such for about a year and having later formed a corporation.

There are eleven assignments of error. Number IV complains of the refusal of the Court to submit certain issues tendered by defendants, while Number V complains of the issues framed and submitted by the Chancellor.

Since the determinative issues of fact in a jury trial are made up from and consonant with the pleadings, we shall abstract briefly the bill and answer herein. Gibson, Sec. 549 et seq.

The bill alleges that about December 24, 1945 complainant agreed to extend credit to defendants, Fiedler & Sullivan, individually and as partners trading as Fied-Sul Paper Mills. That upon the pledge of the individual credit of the defendants complainant began shipping them merchandise.

That the account about January 1, 1947 was current and amounted to $6855.26. That subsequently the balance began to grow larger until on August 1, 1947, it amounted to $26,890.70, which later upon demand was reduced to $24,060.74 at which figure it has remained, because all purchases lately have been for cash.

That about August 1, 1947 complainant learned for the first time that a corporation had been formed by

defendants and that it had taken over certain assets of the individuals and of the partnership all without notice to complainant.

That it had never dealt with the corporation and had relied upon the credit of the partnership and the individuals composing it and that said transfer of assets was fraudulent, etc.

The answer in substance denied that credit was extended to the individuals composing the partnership and denied that complainant did not have notice of the formation of the corporation and averred that since its formation, complainants had dealt with it as such; they denied any fraudulent transfer of assets.

On the trial there was evidence to support a verdict for either party.

Defendants tendered the following issue of fact:

"1. Did the complainants or their agent, Mr. Goldstein, have knowledge or notice of the change from a partnership to a corporation?

"2. Was the balance on the account which the defendants owed as a partnership subsequently paid off in full?"

The Chancellor refused to submit those issues as not being determinative and submitted the following:

"■ Did the complainant sell and deliver to Fied-Sul Paper Mill, or Fied-Sul Paper Mill, Inc., on credit extended the defendants, Chris H. Fiedler and C. R. Sullivan, individually or as partners, merchandise representing the entire amount of the account sued on in this cause, in the sum of $24,060.74. The answer can be either yes or no. And

"■ If you answer Issue No. 1, no, then answer on what date did complainant cease to sell on credit of

142

defendants, C. R. Sullivan and Chris H. Fiedler. And that can be answered by days."

Along with the issues submitted he charged the jury fully as follows:

"Of course, if you answer Issue No. 1, yes, you need not answer Issue No. 2 at all; if you answer Issue No. 1, no, then you take up and reach the answer for No. 2; and the Court charges you that the burden of proof is on the complainant with reference to Issue No. 1. The burden of proof is on the defendants with reference to Issue No. 2, if you get to it.

"Now, the burden of proof, gentlemen, in a lawsuit never changes; whoever has the burden of proof at the start of the lawsuit continues to carry that burden all the way through, and the complainants in this cause claim the personal liability of the defendants, Fiedler and Sullivan, and therefore the burden of proof is on them. The burden of going forward with the evidence does shift in a lawsuit; and in this case that is applicable with reference to the contention that is made that the credit ceases to be extended to the individuals or partners, and that thereafter it is extended to the corporation, Fied-Sul Paper Mill, Inc.; and the burden of going forward with the evidence to show the jury that the complainants did have knowledge and notice of the existence of the corporation and that they no longer had the right to rely on the credit of the individuals, Fiedler and Sullivan, does shift to the defendants; and they claim that it occurred on or about December 23rd, 1946, whereas the complainants claim it didn't occur until along in August, 1947.

"Now, the materiality of that, gentlemen, is not as to when the corporation was organized or whether the complainants had knowledge or notice of the organization

of that corporation; the materiality is, when was the partnership dissolved, and when was knowledge and notice of that dissolution of the partnership brought home to the complainants?

"Now, we have in Tennessee, what is known as the Uniform Partnership Law; it is a law that has been enacted in a large number of the 48 states of the Union, and has been the law of this State since the year 1917, which carried forward into the Code of Tennessee, enacted in 1931, effective January 1st, 1932; and the Court will read to you what the statutory provisions on that subject are, as taken from the Uniform Partnership Act, and will charge you that the same are applicable, too, with the facts of the case at bar. The Statute of this State says with reference to interpretation of knowledge and notice:

" '7842. ▆ A person has "knowledge" of a fact within the meaning of this chapter not only when he has actual knowledge thereof, but also when he has knowledge of such other facts as in the circumstances shows bad faith.

" '▆ A person has "notice" of a fact within the meaning of this chapter when the person, who claims the benefit of the notice, (a) states the fact to such person, or (b) delivers through the mail, or by other means of communication, a written statement of the fact to such person or to a proper person as his place of business or residence.'

"Another section of that same Act, Section 7874 of the Code of Tennessee, under the heading 'Power of partner to bind partnership to third person after dissolution':

" '▆ After dissolution a partner can bind the partnership except as provided in paragraph 3, (a) . . .'

And with reference to that, the Court will charge you that 3 (a) has nothing to do with the facts of this case and therefore can be ignored; that is the exception, and it is therefore no exception in this case.

" 'After dissolution a partner can bind the partnership . . . (a) by any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution, (b) by any transaction which would bind the partnership if dissolution had not taken place provided the other party to the transaction (1) had extended credit to the partnership prior to dissolution and had no knowledge or notice of the dissolution, or (2) though he had not so extended credit, had nevertheless known of the partnership prior to dissolution, and having no knowledge or notice of dissolution, the fact of dissolution had not been advertised in a newspaper of general circulation in the place (or in each place if more than one) at which the partnership business was regularly carried on.'

"Now, with reference to that, the Court will charge you that the mere notice of organization, published in the Daily News is not such advertisement as there comtemplated, and indeed a mere knowledge that there was such a corporation is not sufficient to charge the complainants with knowledge that that corporation had taken over the business of the partnership and that any future transactions must be on the credit of such corporation.

"The material question is, did the defendants bring home to the complainants' knowledge or notice that the partnership had been dissolved, and that any credit extended to the partners was no longer properly to be extended, that thereafter any obligations must be looked to for settlement at the hands of the corporation.

"The Court charges you that knowledge or notice of an agent is sufficient to bind the principal, provided the agent has such duties and authority as a reasonable man would have reason to expect him to communicate such knowledge or notice to the principal. I illustrate that by saying to you that of course you couldn't give notice to a bank by walking in and telling the office boy, because his duties and functions and authority would not be such as you would have a right to assume he would communicate that to his employer.

"Now, then, as appears on the face of this account, it runs from December 24th, 1945 to September 24th—, September 4th, as far as the charges are concerned, September 4th, 1947, and if from the evidence in this cause your answer Issue No. 1, yes—, as I say that is if the complainant has carried the burden of proof and satisfied you by the preponderance of the evidence that it is entitled to an answer, Yes—, you can ignore No. 2; but if from the evidence you reach the conclusion that knowledge or notice of the dissolution of the partnership was brought home to the complainants, then you should answer Issue No. 1, no, and turn to Issue No. 2.

"Now, then, the burden of proof is on the defendants to show you at what date such knowledge or notice was brought home to the complainants, because up to that date, the individual liabilities of the partners would continue. Now, you gentlemen of the jury, when you go to the jury room, will agree on your answer to one or both of these questions, mindful of the instructions the court has given you, and as stated, the answer to No. 1 can be either yes or no, and the answer to No. 2 can be a date, which you fix from the evidence in this cause.

\* \* \* \* \* \* \* \*

"A Juror: Your Honor, may I ask you one question?

"The Court: Yes, sir.

"A Juror: When a business firm incorporates, do they have to give any specific time or days before they incorporate?

"The Court: Well, as I told you gentlemen in my charge, the question of knowledge or notice of the organization or existence of a corporation is immaterial in this lawsuit; what is material is, what if any notice, and when, was given of the dissolution of the partnership. That is what will relieve the individual partners of any further liability, not the mere organization of a corporation and the continuation of the partnership business.

"Now, if it was brought home to the knowledge or notice of the complainants that the corporation had been organized and had taken over the business formerly operated and conducted by the partners, then certainly thereafter they would not be entitled to rely on the individual credit of the partners, but up to the time such notice was brought home to them, they would have that right.

"Now, the answer to the question by the juror, you can treat that just as if it were given in the general charge itself.

"It is now nearly within two minutes of the adjourning hour; so I think I will let you take a noon recess and come back at one-thirty, at which time the issues will be submitted to you. Don't talk to anybody about the lawsuit, or permit anybody to talk to you about it.

\* \* \* \* \* \* \* \*

"The Court: Is there a prospect of agreement?

"A Juror: There doesn't seem to be; we decided there wasn't enough evidence on either side.

"The Court: Well, would the Court's charge on where the burden of proof lies help you in that regard. Is there any assistance the Court can give you with reference to instructions. It occurs to the Court to tell you that on any issue where the burden of proof is not carried by the party who has that burden, the verdict will be against that party, and the Court charges you on Issue No. 1, the burden of proof is on the complainants; on Issue No. 2, the burden of proof is on the defendants.

"Now, the Court qualified the charge as to the burden of proof on Issue No. 1, that wherever the burden of proof once starts, it stays through the lawsuit, but the burden of proof as to the evidence can and does change, and the application to this case in that regard is simply this, that the complainants in order to entitle themselves to a yes answer to the first question must satisfy you by the preponderance of the evidence that they did sell merchandise to the partnership and continue to sell on down through the entire account, without knowledge that they were expected to look to the newly organized, or organized, corporation for payment.

"Now, if no evidence had been offered at all on that by either side as to the organization of a corporation and notification to the complainant that the partnership had been dissolved and the business of the former partnership taken over by the corporation, then you would have a right to rely on the simple statement of the complainant's witnesses on the subject; but once that has gone into the picture, the burden of producing the evidence to establish as a fact that the complainants did know that the partnership had been dissolved and did know that they were expected to look to the corporation to further payments, passed over to the defendants. Now, does that help you gentlemen in any way with the problem?

"A Juror: Your Honor, that was the point in your charge that put a doubt about it when you charged us, I believe, that when Mr. Sullivan went to see Mr. Goldstein, that he should have also acquainted him with the fact that they as individuals —that is, he and Mr. Fiedler were no longer responsible to anything, of course the testimony as far as I was concerned was not convincing from either party; that is why I couldn't vote on it.

"The Court: What the Court charged you then, and repeats now, is that the knowledge of the existence of the corporation by the complainants is immaterial because there is nothing inconsistent with the organization of a corporation and the continued liability of the partnership; what is material is knowledge of the dissolution of the partnership because until the knowledge is brought home to the complainants that the partnership has been dissolved or that the complainant is entitled to continue to rely on the partnership to whom it sold, and to whom, if it did, it continued to sell.

"Now, that is what the Court tried to make clear in its charge, that the materiality of the organization of the corporation is important only, insofar as it can, to establish in behalf of the defendants that the complainant was no longer looking to the credit of the partnership, and no longer had a right so to do.

"A Juror: Your Honor, in that connection, I have had a little doubt in my mind as to whether Mr. Sullivan should have made it clear that the credit that was extended to him and Mr. Fiedler was now at an end.

"The Court: Well, that is the very issue that you gentlemen have to determine by answering that question, whether he did that or whether he didn't. Now, I will send you back to the juryroom for further deliberation, but I make this further observation, gentlemen, we

haven't had a single hung jury this term; if this jury can't agree on this verdict, it will be the first time this term that there has been a hung jury. You twelve men are just as intelligent and just as capable of settling the questions of fact in this case as any other twelve men in Shelby County; so, go back and see if you can't agree on a verdict.''

We have set out all except the general charge because some of the assignments, which will be referred to later, go to the charge as given or to the failure to charge special requests.

█ Referring now to assignments IV and V, we think there was no error in the action of the court.

Issue No. 1 as submitted by the Chancellor embodied accurately the theory of the bill on which complainant sought a verdict. The answer denied the factual averments of the bill and averred notice both actual and constructive.

█ The Chancellor then charged fully and correctly that the important thing was whether the complainant had notice or knowledge of the dissolution of the partnership. That mere notice or knowledge of the formation of the corporation standing alone is immaterial because there is no inconsistency in the continued existence of the partnership alongside the newly created corporation. That the creation and existence of the corporation were important and material only when it should further appear that it had become known to complainant that such corporation had taken over the business formerly operated by the partnership and had supplanted the latter.

We think the issue submitted conformed to the pleadings and when taken in connection with the charge fairly and fully presented the question to the jury.

■ We think the action of the Chancellor was in accord with good practice of long standing; that is, submit an issue that is inclusive and determinative and then explain to the jury how the court interprets the language and legal import of the issue.·

■ In no event was defendant's tendered Issue No. 2 proper, because not determinative and relates to only a part of the evidence on the ultimate fact sought to be proved, to wit, notice or knowledge.

We, therefore, overrule assignments IV and V.

Assignments IX, X and XI complain of the charge on knowledge or notice.

■ The criticisms are that the charge did not allow the jury to consider facts and circumstances showing knowledge of dissolution of the partnership; that notice to the agent Goldstein would not be notice to his principal, the complainant, unless actually communicated to his principal; that it did not allow the jury to consider notice or knowledge of the organization as a circumstance to put complainant upon inquiry.

There is no merit in any of these assignments, as will be obvious from an examination of the charge as a whole.

■ No citation of authority is necessary for the rule that the court cannot be put in error by picking out isolated parts of the charge, as is here attempted.

The court fully charged the Uniform Partnership Act, which is Code Section 7874 relating to notice or knowledge and is but an enactment of common-law rules. See Kirkman v. Ellis v. Snodgrass, 40 Tenn. 370; Hutchins v. Bank of Tennessee, 27 Tenn. 418; Hutchins v. Sims, 27 Tenn. 423; Hutchins v. Hudson, 27 Tenn. 426; Haynes v. Carter, 59 Tenn. 7, 27 Am. Rep. 747; C. T. Cheek & Sons v. Winchester Bottling Works, 2 Tenn. Civ. App. 614.

■ The cases show that the notice may be an express notice or may be implied from sufficient circumstances. However obtained, it must be sufficient to amount to *actual* knowledge where one who has been dealing with the firm before dissolution is involved. The knowledge may be constructive as to those who have not dealt with the firm before dissolution.

We, therefore overrule these assignments.

Assignments VI, VII and VIII relate to the refusal of the court to charge special request.

■ The first two are overruled because the matter was amply covered in the charge as given.

The other one was a general statement of the principle of estoppel that one who remains silent when he should have spoken is estopped later to speak to the prejudice of another. It is directed by inference at the testimony of defendant, Sullivan, that when he made the assertion at Fischer Lime & Cement Co. in the presence of Goldstein that Goldstein, the agent of complainant had been notified of the dissolution of the firm, Goldstein failed to deny it.

■ Goldstein testified that he heard no such statement by Sullivan, so that it was a question for the jury whether such occurred and, if so, under what circumstances, whether Goldstein was within hearing distance, or whether he was paying attention.

■ The request as framed is not a correct statement of the general principle because it omits the condition that the circumstances must be such as would require the person to speak; it in fact, tacitly assumes the existence of such circumstances, which would be an invasion of the jury's function and would have been prejudicial to complainant.

The instruction would have been out of place and erroneous as a matter of law for other reasons: (1) conduct either affirmative or negative never works an estoppel against the actor unless (a) it is relied on and (b) causes a change of position to the detriment of the opposite party; (2) there is no evidence of reliance and change of position to the detriment of defendants.

For a recent discussion of Estoppel in our reports see Church of Christ v. McDonald, 180 Tenn. 86, 171 S. W. 2d 817, 146 A. L. R. 1173; 9 Tenn. Digest 386, Sec. 58; 19 Am. Jur. 661, Sec. 55.

There was no error in refusing to give this in the charge, and we overrule the assignment.

Assignments I, II and III complain of the admission over defendant's objection of certain testimony of Mr. Letellier, the head of complainant firm, as being hearsay.

The substance of this testimony is that when defendant, Sullivan, came to complainant's Memphis office to establish credit for the partnership and the request was passed to him at the New Orleans office, the witness made certain inquiries about the credit standing of Fiedler and Sullivan and was told by others that Sullivan had small means and Fiedler was well fixed.

Of course, if the issue was whether the defendants were entitled to credit, this hearsay evidence would not be admissible, because the solution of the issue would depend upon the truth of the information given by others to the witness.

But that was not the purpose of the evidence. The purpose was to show that he thought the firm was entitled to credit because Fiedler *had the reputation* of being a man of means. He was testifying as to the origin of complainant's business relations with the partnership.

 In short, the testimony was introduced not to show the truth of the information but the fact that the witness did receive such information as to defendant's financial reputations—common business practice. For such purpose it was not inadmissible.

Dean Wigmore, Evidence, 2nd Ed., Sec. 1766, says:

"The true nature of the Hearsay rule is nowhere better illustrated and emphasized than in those cases which fall without the scope of its prohibiton. The essence of the Hearsay rule is the distinction between the testimonial (or assertive) use of human utterances and their non-testimonial use.

"The theory of the Hearsay rule (ante Sec. 1361) is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the Hearsay rule does not apply. It may or not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule."

Again,

"The prohibition of the Hearsay rule, then, *does not apply to all words or utterances as such.* If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, *as assertions to evidence the truth of the matter asserted; . . .".* See also Section 1789.

We, therefore, overrule all assignments of error.

The decree below is affirmed and a judgment will be entered here for $24,060.74, with interest from May 13, 1948 and costs.

Anderson, P. J., and Baptist, J., concur.