210 N.J. Super. 159 (1986)
509 A.2d 269
TAYLOR OIL COMPANY, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
JOHN GIORDANO, SR., INDIVIDUALLY, DEFENDANT-APPELLANT, AND GIORDANO HEAVY EQUIPMENT CORP., A NEW JERSEY CORPORATION, SOUTH JERSEY BULK HANDLING CORP., A NEW JERSEY CORPORATION, AND JOHN GIORDANO, JR., INDIVIDUALLY, JOINTLY, SEVERALLY, AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 22, 1986.
Decided May 16, 1986.
*160 Before Judges PRESSLER, BILDER and GRUCCIO.
Clark, Gertler & Hanna, attorneys for appellant (Michael T. Mills, on the brief).
Perskie, Nehmad & Grossman, attorneys for respondent (John L. Grossman, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal raises the issue of whether a sole proprietor enjoying the benefit of an ongoing credit relationship with a supplier remains personally liable for debt incurred by his business after its incorporation, absent notice to the trade creditor of the incorporation.
*161 Defendant John Giordano, Sr. appeals from a judgment entered in the Superior Court, Law Division, after a bench trial, holding him liable for the cost of fuel delivered by plaintiff Taylor Oil Co. to defendants Giordano Heavy Equipment Corp. and South Jersey Bulk Handling Corp. The corporations incurred these debts in the course of a credit relationship established with plaintiff by Giordano, Sr. while he was operating as Giordano Heavy Equipment Rental, a sole proprietorship. Defendant John Giordano, Jr. was held not liable.[1]
According to Judge Weinstein's findings, plaintiff began supplying fuel to the Giordanos for the operation of their vehicles and equipment in Port Newark in 1979. After checking Giordano, Sr.'s credit, plaintiff entered into an oral open-account arrangement with Giordano, Sr., requiring payment within 30 days after delivery. Eventually, plaintiff also started supplying fuel to the Giordanos' operations in the Camden port area, which they commenced in late 1980 or early 1981. In May 1981 the two Giordanos incorporated Giordano Heavy Equipment, Inc., which continued the business of the proprietorship and of which they were the sole officers and stockholders. By October 1981 the business was using corporate checks and stationery, had opened corporate bank accounts, and had the corporate name painted on its equipment and on signs posted at the work site. The Giordanos did not, however, furnish plaintiff with notice of the incorporation, and plaintiff had no knowledge thereof until it finally stopped doing business with the Giordano businesses in March 1984.[2] The Giordano firm began falling *162 behind in its payments sometime in 1982. Although the Giordanos continued to make some payments on the account and both father and son continually reassured both plaintiff's president and its regional sales manager that they would meet their obligations, their net outstanding balance, including interest charges, had reached $38,000 by July 1983. At the end of March 1984, after plaintiff had tightened its credit terms and at the point when it ceased doing business with Giordano, the total debt, including interest, was $44,231.74. The precipitating cause of plaintiff's termination of its business relationship with the Giordanos was its discovery that it was dealing with a corporation rather than the proprietorship with whom it had commenced its dealings. Upon the Giordanos' refusal to guarantee the corporate debt, plaintiff refused to extend further credit.
Based on these findings, the trial judge entered judgment for plaintiff in its action on the debt not only against the two corporations but also against Giordano, Sr., concluding that although there had been no fraud by the Giordanos, plaintiff had neither known nor received notice of the change in business organization. He therefore held that Giordano, Sr., as the sole proprietor of the original business, remained liable for the debts of the corporations. It was his view that allowing the corporate form to insulate Giordano, Sr. from liability under these circumstances would constitute a "manifest injustice." We affirm, rejecting Giordano, Sr.'s contention that the trial judge erred as a matter of law in disregarding the corporate form.[3]
Although the issue here presented has not been considered in a reported decision in this state, the trial court's determination was consonant with the rule, followed in other jurisdictions, which imposes continued liability on the principal of an unincorporated business for those post-incorporation *163 debts incurred in the course of an ongoing credit relationship commenced prior to incorporation, unless the creditor receives notice or has or is chargeable with knowledge of the intervening incorporation.[4]See, e.g., Kapp v. Naturelle, Inc., 611 F.2d 703, 709 (8th Cir.1979); Johnson Brothers Oil Co. v. Chies, 293 Minn. 363, 199 N.W.2d 441 (1972); Letellier-Phillips Paper Co. v. Fiedler, 32 Tenn. App. 137, 222 S.W.2d 42 (Ct.App. 1949), cert. den. (1949); Philipp Lithographing Co. v. Babich, 27 Wis.2d 645, 135 N.W.2d 343 (1965); Johnston v. Biehl, 7 Wash. App. 757, 502 P.2d 1027 (Ct.App. 1972). Cf. Kingsberry Homes v. Corey, 457 F.2d 181 (7th Cir.1972) (where principals had executed written guarantees, they remain liable to supplier for obligations of subsequently formed corporation even where supplier had notice of incorporation).
We are persuaded that the rule of continuing liability is commercially reasonable and jurisprudentially sound. It is evidently predicated on the perception that one seeking the broad immunity from personal liability afforded by incorporation should be obliged to give appropriate notice of incorporation to those of its creditors who have been induced to enter into business arrangements in reliance on the principal's personal credit. We are satisfied that as a matter of commercial necessity, the principal cannot be permitted unilaterally to defeat the expectations of the creditor by the simple expedient of an unnoticed, self-insulating incorporation. Indeed, the New Jersey Uniform Partnership Act, N.J.S.A. 42:1-1, et seq., expressly *164 so provides. N.J.S.A. 42:1-35(1), states, in pertinent part, that:
After dissolution a partner can bind the partnership...:
b. By any transaction which would bind the partnership if dissolution had not taken place, provided the other party to the transaction
I. Had extended credit to the partnership prior to dissolution and had no knowledge or notice of the dissolution; or
II. Though he had not so extended credit, had, nevertheless, known of the partnership prior to dissolution, and, having no knowledge or notice of dissolution, the fact of dissolution had not been advertised in a newspaper of general circulation in the place (or in each place if more than one) at which the partnership business was regularly carried on.
"Notice" and "knowledge" are, moreover, defined by N.J.S.A. 42:1-3 as follows:
1. A person has "knowledge" of a fact within the meaning of this chapter when he has actual knowledge thereof, or when he has knowledge of such other facts as in the circumstances shows bad faith.
2. A person has "notice" of a fact within the meaning of this chapter when the person who claims the benefit of the notice
a. States the fact to such person, or
b. Delivers through the mail, or by other means of communication, a written statement of the fact to such person or to a proper person at his place of business or residence.
It is thus evident that if Giordano, Sr.'s individual proprietorship with which plaintiff had intitiated its business relationship had been a partnership, Giordano, Sr. would have remained liable pursuant to the Act since plaintiff had neither knowledge nor notice as therein defined. See, e.g., so applying state provisions corresponding to the Uniform Partnership Act, 6 U.L.A. §§ 3, 35 (1969), Credit Bureaus of Merced County, Inc. v. Shipman, 167 Cal. App.2d 673, 676-79, 334 P.2d 1036, 1039-1040 (Dist.Ct.App. 1959); Epley v. Hiller, 128 Cal. App.2d 100, 103, 274 P.2d 696, 698 (Dist.Ct.App. 1954); Kaydee Sales Corp. v. Feldman, 14 Misc.2d 793, 795, 183 N.Y.S.2d 151, 154 (Sup.Ct. 1958); Aetna Casualty & Surety Co. v. Wofford, 296 P.2d 967, 970 (Okl. 1956); Johnson Tire Co. v. Maddux, 188 Tenn. 626, 627-628, 221 S.W.2d 948, 948-949 (1949); Letellier-Phillips, supra, 32 Tenn. App. at 150, 222 S.W.2d at 48.
*165 We are of the view that the principles controlling the continuing liability of partnerships are equally applicable to sole proprietorships. From the standpoint of the creditor dealing with an unincorporated commercial customer, not only is there no functional distinction between a partnership debt and a proprietorship debt but, moreover, a proprietor has an even more direct relationship to his business debt than does a partner. See Zucker v. Silverstein, 134 N.J. Super. 39, 48 (App.Div. 1975). Compare Grober v. Kahn, 47 N.J. 135, 146 (1966).
Since the trial judge found that plaintiff had not been given direct notice of the incorporation and had no actual knowledge thereof, the final question requiring our attention is whether the trial judge was justified by the record in concluding that plaintiff not only had no actual knowledge of the incorporation but that, under the circumstances, it was not chargeable with knowledge. The primary circumstance from which plaintiff's knowledge could have been inferred was its receipt of corporate checks after October 1981. That fact alone, however, cannot be accorded dispositive effect. Its import, rather, is dependent upon the circumstances surrounding the delivery of the corporate checks as evaluated in light of the totality of the relevant transactional circumstances. See, e.g., Kapp v. Naturelle, Inc., supra; Philipp Lithographing Co. v. Babich, supra; Johnston v. Biehl, supra.
In concluding that the mere receipt of corporate checks here did not justify imputing knowledge of the incorporation to plaintiff, the trial judge relied on detailed factual findings, including the following:
* * * [i]t was reasonable for Taylor to have relied upon the continued existence of John Giordano, [Sr.] trading as Heavy Equipment Rentals, when the method of ordering was precisely the same, the bank account, from all appearances, same bank, same color check, was the same, the type of purchases made were the same, and the steady payment upon delivery or within 30 days was the same. Nothing had changed other than now there were two signatures on the *166 check, if anyone examined them, and there was the word, C-o-r-p, period, at the top of the check, if anyone examined them.
He also found that the Giordanos signed the checks as individuals, without any corporate-officer designation and that plaintiff's president, in an effort to get paid, had accepted a number of different types of checks from the Giordanos, including third-party checks payable to the Giordano business, personal checks drawn on the joint account of Giordano, Jr. and his wife, and, during Giordano, Sr.'s illness, corporate checks signed by Giordano, Jr. and the wife of Giordano, Sr. Indeed, asked on cross-examination if he had accepted checks drawn on the Giordano corporate account, plaintiff's president stated, "I probably wouldn't look  I ... probably looked at the amount, [and to] see if it was signed, and turned it in to the office." And on redirect, he explained that, "[A]s long as it cleared my bank I'm not fussy who pays me." Finally, the trial judge found that plaintiff had ceased extending credit to the Giordanos when it first discovered that they had formed a corporation, South Jersey Bulk Handling, in early 1984.
These findings were supported by the record, and we accept them. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974). These facts, moreover, clearly do not amount to "knowledge" as defined by the Partnership Act. Nor do they compel a conclusion of imputed knowledge.
The legal question which is really presented here is one of allocating notice responsibility between creditor and debtor. As a matter of public policy and commercial reality, a trade creditor should not be burdened with the duty of continually monitoring its customers' business organization. Rather, the business entity seeking the benefits of incorporation should be required to provide notice to its trade creditors of the status change. The individual defendant here failed to do so, to plaintiff's prejudice. He cannot be absolved from liability.
Affirmed.
NOTES
[1] Although Giordano, Sr. testified that his son was a "silent partner," the trial court found that Giordano, Jr. was not a partner for purposes of the debt to Taylor and thus absolved him of liability.
[2] In September 1983, again without notice to plaintiff, Giordano, Jr. formed a new corporation, South Jersey Bulk Handling, which succeeded to the Camden business and all of whose stock was owned by Giordano, Jr. In February 1984 this corporation purchased the assets of the first corporation for a nominal consideration.
[3] Defendant's argument that the trial judge improperly "pierced the corporate veil" relies, for the reasons herein set forth, on an inapposite theory of the case.
[4] The doctrine of constructive notice, as opposed to express or implied notice, has, insofar as our research discloses, been employed to protect the debtor only where that consequence is mandated by a specific state statutory provision. See Negrini v. Plus Two Advertising, Inc., 695 S.W.2d 624, 629 (Tex. Ct. App. 1985). Thus, although some courts have stated the rule as encompassing actual or constructive notice of the incorporation, a more accurate formulation would extend the debtor's protection only to situations where the creditor has received actual notice, express or implied. See Black v. Public Service Elec. & Gas Co., 98 N.J. Super. 366, 375 (App.Div. 1968).