ALFONSE C. YANNUZZI, MARY T. YANNUZZI, ANTHONY
G. YANNUZZI AND MARY C. YANNUZZI, PLAINTIFFS-
APPELLANTS, v. UNITED STATES CASUALTY COM-
PANY, A CORPORATION OF THE STATE OF NEW
YORK, DEFENDANT-RESPONDENT.

Argued May 31, 1955—Decided June 27, 1955.

202

*Mr. John J. Rafferty* argued the cause for the appellants (*Messrs. Rafferty & Blacher*, attorneys; *Mr. Philip Blacher*, of counsel).

*Mr. John C. Stockel* argued the cause for the respondent.

The opinion of the court was delivered by

JACOBS, J. The Appellate Division, in an opinion reported at 32 *N. J. Super.* 373 (1954), held that the defendant United States Casualty Company was not liable under its automobile accident indemnity policy because the assureds had not sent to the home office of the company, the suit papers in the action instituted against them by the plaintiffs Yannuzzis. We granted certification under *R. R.* 1:10–2.

The Casualty Company is a New York corporation with its home office at 60 John Street, New York City, and it has a Philadelphia branch managed by John G. Harkins. Under date of May 1, 1950 the Casualty Company entered into an agency contract with Morris H. Zackowitz of Englishtown, New Jersey, which designated Zackowitz as its agent in the following territory—"Englishtown and elsewhere in the State of New Jersey"—and authorized him to solicit applica-

tions for insurance, deliver policies, endorsements and binders which the company authorized to be issued and delivered, collect premiums and receipt therefor, cancel policies in his discretion where cancellation was legally possible, and retain his commissions from premiums collected in accordance with specified rates. The contract stipulated that the agent should have the right in his discretion "to designate sub-agents of the Company in the above described territory, who shall report through him, but the Agent shall be answerable to the Company in respect of business placed with the Agent by such sub-agents and accepted by the Company as if such business had been produced directly by the Agent under this Agreement."

The agency contract was signed by Harkins on behalf of the company and by Zackowitz as agent and after its execution Zackowitz duly acted as agent for the company, performing all of the functions normally incident to his position. He solicited business and, in regular course, delivered the policies which were sent to him by the company. These policies were completely filled in at the company's Philadelphia branch in accordance with his directions but they provided that they "shall not be binding upon the Company until countersigned on the declarations page by a duly authorized representative of the Company"; Zackowitz countersigned them as "Authorized Representative" and delivered them to the assureds. Whenever the assureds had accidents covered by their policies they sent the notices thereof and any later suit papers to Zackowitz and he in turn forwarded them to the company's Philadelphia branch. Zackowitz testified that suit papers invariably came to his office at Englishtown and that in no instance did any of his assureds ever send them to the company's home office in New York or branch office in Philadelphia.

In 1951 George and Steve Cherefko of Oldbridge, New Jersey ordered an automobile accident insurance policy from Zackowitz; in due course they received policy No. AP848170 issued by the defendant casualty company effective June 20, 1951 and countersigned by Zackowitz as authorized repre-

sentative of the company. On December 9, 1951 one of the automobiles covered by the policy was involved in an accident and the Cherefkos notified Zackowitz who in turn sent the customary written notice to the company's Philadelphia office and received its customary acknowledgment. On October 16, 1952 the Cherefkos were served with suit papers in a Middlesex County Court action by the plaintiffs Yannuzzis who claimed damages for injuries allegedly suffered in the December accident. On the following day the Cherefkos delivered the suit papers to the Englishtown office of Zackowitz but by mistake they were forwarded by Zackowitz or his employee to the wrong insurance company.

In the meantime the defendant Casualty Company had terminated Zackowitz' agency effective January 1, 1952, although admittedly no notice of the termination had been given to the Cherefkos or, indeed, to other assureds. On the contrary, even after January 1, 1952 Zackowitz continued, with the company's approval, to process matters relating to policies originally delivered through his office; thus an endorsement effective January 17, 1952 was countersigned and delivered by Zackowitz to the Cherefkos for attachment to their policy and comparable endorsements were likewise countersigned and delivered by Zackowitz to other assureds long after January, 1952. Zackowitz testified that although he sent the notice of the Cherefko accident in December to the company, it never thereafter suggested to him that he notify the Cherefkos that he was no longer the company's agent or that any ensuing suit papers should be sent directly to the company rather than to him.

On January 29, 1953 the plaintiffs Yannuzzis entered a default judgment in the Middlesex County Court action against the Cherefkos who had failed to file answer. The defendant Casualty Company caused application to be made on Cherefkos' behalf to have the judgment reopened, but the application was denied. The plaintiffs Yannuzzis then filed their action in the Superior Court seeking judgment against the defendant Casualty Company for the amount due on the judgment against the Cherefkos which was well within

the policy limits. Trial was duly held and at the close of the testimony cross motions were made for the entry of judgment. The material facts were not in dispute and the trial judge, being of the opinion that the delivery of the suit papers to Zackowitz constituted delivery to the company within the policy requirements, granted the plaintiffs' motion and entered judgment accordingly.

On appeal, the Appellate Division took a contrary view; in its opinion it set forth the pertinent policy provisions which did not differ significantly from those customarily embodied in comparable policies; they provided generally that notice of accident shall be given " 'to the company or any of its authorized agents' "; that in the event claim is made or suit is brought " 'the insured shall immediately forward to the company every demand, notice, summons or other process received by him' "; that no action shall lie against the Company unless, as a condition precedent thereto, " 'the insured shall have fully complied' " with the terms of the policy; that notice to any agent " 'shall not effect a waiver or a change' " in any part of the policy; and that the policy embodied all agreements between the assured " 'and the company or any of its agents' " relating to the insurance. See 32 *N. J. Super.*, at *page* 376. The Appellate Division construed the policy provisions as casting "the burden on the insured to forward notice of the suit to the home office and nowhere else" and concluded that this provision was "not fulfilled by the insured" (see 32 *N. J. Super.*, at *page* 380) ; furthermore, it found that the Company's employment of Zackowitz "was not a general agency but limited to the acts directed by the Company and without power or authority to waive a condition set forth in the contract." See 32 *N. J. Super.*, at *page* 378. Accordingly, it reversed the judgment for the plaintiffs which had been entered in the trial court. We consider that the result reached by the Appellate Division was not in just and proper furtherance of applicable principles of construction, agency and waiver in the field of insurance law. See *Toub v. Home Indemnity Co., N. Y.*, 116 *N. J. L.* 287, 291, 292 (*Sup. Ct.* 1936) ; *Carson v. Jersey*

*City Insurance Co.*, 43 *N. J. L.* 300, 310 (*Sup. Ct.* 1881), affirmed 44 *N. J. L.* 210 (*E. & A.* 1882); *Millville Mut. Marine & Fire Ins. Co. v. Mechanics & Workingmens Building Association*, 43 *N. J. L.* 652, 654 (*E. & A.* 1881); *Snyder v. Dwelling House Insurance Co.*, 59 *N. J. L.* 544, 548 (*E. & A.* 1896). *Cf. Mortgage Corporation of New Jersey v. Aetna Casualty & Surety Co.*, 19 *N. J.* 30 (1955); *Schneider v. New Amsterdam Cas. Co.*, 22 *N. J. Super.* 238, 242 (*App. Div.* 1952); *Volker v. Connecticut Fire Ins. Co.*, 22 *N. J. Super.* 314, 325 (*App. Div.* 1952).

In the *Toub* case, *supra*, the policy provided that the assured should give notice of accident to the company's home office at New York or to an authorized agent, and that in the event of suit he "shall immediately forward to the Company at its Home Office every summons or other process served upon him." The assured failed to send to the home office the suit papers which had been served in an action instituted against him; however, he did deliver them to the agent who had issued his policy in the defendant Home Indemnity Co., and the agent inadvertently sent them to the wrong insurance company. When the Home Indemnity Co. was later advised of the pendency of the action it disclaimed liability and the assured was obliged to defend at his own expense. In holding that the assured could recover the expense which he had thus incurred, Justice Heher reaffirmed several highly just principles which we consider to be particularly applicable in the instant matter. He first noted that since the language of the accident indemnity policy afforded room for construction it was to be given a liberal interpretation in favor of the assured; the rule to which he referred has been widely recognized in our courts as well as in courts of other states throughout the country. See *Mortgage Corporation of New Jersey v. Aetna Casualty & Surety Co., supra; Schneider v. New Amsterdam Cas. Co., supra; Jackson Floor Covering, Inc., v. Maryland Cas. Co.*, 117 *N. J. L.* 401, 403 (*E. & A.* 1937); 13 *Appleman, Insurance*, § 7483 (1943); 1 *Couch, Insurance*, § 188(*b*) (1929). He then held that the agent had apparent authority

to accept the suit papers and thereby waive literal compliance with the provision that they be delivered to the home office; this holding likewise finds support in cases decided in our courts as well as in courts of other states. See *Volker v. Connecticut Fire Ins. Co., supra; Millville Mut. Marine & Fire Ins. Co. v. Mechanics & Workingmens Building Association, supra; Carson v. Jersey City Insurance Co., supra; Bruins v. Anderson,* 73 *S. D.* 620, 47 *N. W. 2d* 493, 497 (*Sup. Ct.* 1951); *Hankins v. Public Service Mut. Ins. Co.,* 192 *Md.* 68, 63 *A. 2d* 606, 614 (*Ct. App.* 1949); 8 *Appleman, supra,* § 4740; 16 *Appleman, supra,* § 8674; 2 *Couch, supra,* §§ 514, 548; Note, "Liability insurance: clause with respect to notice of accident or claim, etc., or with respect to forwarding suit papers," 18 *A. L. R. 2d* 443 (1951). *Cf. Mechem, Outlines of Agency* (4th ed. 1952), 54 *et seq.; Seavey, Studies in Agency,* 186, 187 (1949).

In the *Volker* case, *supra,* our Appellate Division properly took the position that an insurance company must be deemed to have authorized its agent to do what is usual or necessary in the transaction of its insurance business and that secret limitations may not deprive the assured of the benefits of acts done by the insurance agent within the apparent scope of his authority. Similarly in the *Hankins* case, *supra,* the Maryland Court of Appeals expressed the thought that in order to insure fair, equitable and just dealings between an insurance company and its policy holders, it is essential [192 *Md.* 68, 63 *A. 2d* 614] " 'that the law of principal and agent be liberally interpreted by the courts in favor of the insured, and that the agent be held to have had all of the authority which it was apparent to the insured he possessed.' " *Cf. J. Wiss & Sons Co. v. H. G. Vogel Co.,* 86 *N. J. L.* 618, 621 (*E. & A.* 1914); *Ruppert v. Jernstedt & Co.,* 116 *N. J. L.* 214, 217 (*E. & A.* 1936). In the *Bruins* case, *supra,* the Supreme Court of South Dakota recognized that service of notice on the company's agent will generally satisfy a policy requirement that notice be forwarded by the assured to the company; in the course of its opinion Judge Roberts said [73 *S. D.* 620, 47 *N. W. 2d* 497]:

"This court in accord with Illinois and many other states has held that an agent having authority to solicit insurance, receive and forward applications, deliver policies and collect premiums is a general agent in the sense that his knowledge becomes the knowledge of the company and that he has *prima facie* authority to waive conditions as to notice and proof. *Vesey v. Commercial Union Assur. Co.*, 18 *S. D.* 632, 101 *N. W.* 1074; *Thomas v. Modern Brotherhood of America*, 25 *S. D.* 632, 127 *N. W.* 572; *Sawyer v. National Fire Ins. Co.*, *supra* [53 *S. D.* 228, 220 *N. W.* 503, 61 *A. L. R.* 306]; see also *Citizens Ins. Co. v. Stoddard*, 197 *Ill.* 330, 64 *N. E.* 355; *Maltby v. Empire Auto Ins. Ass'n*, 239 *Ill. App.* 532; *St. Paul Fire & Marine Ins. Co. v. McElvaney*, 175 *Ark.* 1170, 300 *S. W.* 448; *Thompson v. Traders' Ins. Co.*, 169 *Mo.* 12, 68 *S. W.* 889; *Lind v. State Auto. Mutual Ins. Ass'n*, 128 *Ohio St.* 1, 190 *N. E.* 138; *Pastucha v. Roth*, 290 *Mich.* 1, 287 *N. W.* 355; *Home Ins. Co. v. Jones*, 231 *Ala.* 484, 165 *So.* 211; *Virginia Fire & Marine Ins. Co. v. Richmond Mica Co.*, 102 *Va.* 429, 46 *S. E.* 463."

In *Millville Mut. Marine & Fire Ins. Co. v. Mechanics & Workingmens Building Association, supra,* Justice Van Syckel, in an opinion delivered for the Court of Errors and Appeals, noted that if a person is in fact or apparently a general agent of the insurance company he stands in the place of the company which is bound by any acts within the apparent range of his employment; as he put it: "Being held out as an agent, without expression of any limitation, public policy and good faith unite in requiring that general authority shall be ascribed to him" as the insurance company's representative. See *Zurich General Accident & Liability Ins. Co. v. Essex Chair Co.*, 11 *N. J. Misc.* 447, 448 (*Sup. Ct.* 1933). The court's actual holding in the *Fire Ins. Co.* case was that the agent there concerned had power to waive a policy condition against alienation of the insured property. But *cf. Shyowitz v. Union Indem. Co.*, 104 *N. J. L.* 339 (*E. & A.* 1928); *Locicero v. John Hancock Mutual Life Ins. Co.*, 32 *N. J. Super.* 300, 308 (*App. Div.* 1954). In *Snyder v. Dwelling House Insurance Co., supra,* Justice Depue, in a later opinion for the Court of Errors and Appeals, held that a policy condition to the effect that no agent could waive any policy provision was, in any event, inapplicable to matters to be performed by the assured after the event insured against had occurred. See *Carson v. Jersey City Insurance*

*Co., supra; Kissinger v. North American &c., Society,* 108
*N. J. L.* 405, 409 (*E. & A.* 1932); *Concordia Ins. Co. v.
School Dist.,* 282 *U. S.* 545, 551, 51 *S. Ct.* 275, 75 *L. Ed.*
528, 541 (1931); *Lind v. State Automobile Mut. Ins. Ass'n.,*
128 *Ohio St.* 1, 190 *N. E.* 138 (*Sup. Ct.* 1934). *Cf. Cheshan-
sky v. Merchants' Fire Ins. Co.,* 102 *N. J. L.* 414, 417
(*E. & A.* 1926).

It is true that the cited cases did not deal with an agent
whose agency contract had been terminated by the insurance
company, but the ineffectiveness of such termination as to
assureds who had no notice thereof is well settled. See
*Southern Life Ins. Co. v. McCain,* 96 *U. S.* 84, 85, 24 *L. Ed.*
653, 654 (1878); *Hall v. Union Indemnily Co.,* 61 *F. 2d* 85,
91 (8 *Cir.,* 1932), *certiorari* denied 287 *U. S.* 663, 53 *S. Ct.*
222, 77 *L. Ed.* 572 (1932); *Georgia Life Ins. Co. v. Otter
Creek Coal Co.,* 67 *Ind. App.* 277, 119 *N. E.* 151 (1918).
*Cf.* 8 *Appleman, supra,* § 4736; 1 *Restatement, Agency,* §
127 (1933); *Mechem, supra,* § 284. In the *McCain* case,
*supra,* Justice Field, in an opinion delivered for the Supreme
Court, said:

"No company can be allowed to hold out another as its agent,
and then disavow responsibility for his acts. After it has appointed
an agent in a particular business, parties dealing with him in that
business have a right to rely upon the continuance of his authority,
until in some way informed of its revocation. The authorities to
this effect are numerous, and will be found cited in the treatises
of Paley and Story on Agency. *Story,* secs. 470 and 471; *Paley,*
sec. ——.

"The law is equally plain that special instructions limiting the
authority of a general agent, whose powers would otherwise be
coextensive with the business intrusted to him, must be communicated
to the party with whom he deals, or the principal will be bound
to the same extent as though such special instructions were not
given. Were the law otherwise, the door would be open to the
commission of gross frauds. Good faith requires that the principal
should be held by the acts of one whom he has publicly clothed
with apparent authority to bind him. *Story, Ag.,* secs. 126 and
127, and cases there cited."

In the instant matter the assureds' policy contained
no provision requiring that they send the suit papers to the

home office of the company at New York; it simply provided that the assureds shall immediately forward "to the company" every summons or other process and it seems to us that the assureds could reasonably take this to mean that they could properly send the suit papers to the authorized Company agent from whom they received the policy or to the company's nearest branch office at Philadelphia or its home office at New York. Furthermore, in *L.* 1924, *c.* 123 (now *R. S.* 17:28–2) the Legislature expressly provided that every policy shall be deemed to include a provision that notice by the assured "to any authorized agent of the insurer within this state" shall constitute notice to the insurer. We unhesitatingly reject the defendant's contention that this provision, though phrased very comprehensively, is applicable only to cases where the assured has become insolvent or bankrupt; the statute's reference to the continued liability of the insurer notwithstanding the assured's insolvency or bankruptcy is an independent one and does not limit the scope of the clear provision relating to notice to the insurer's agent. We likewise reject the defendant's contention that we should not take cognizance of the statute because (though fairly briefed and argued before us) it had not earlier been brought to the attention of the lower courts. The doctrine that courts will ordinarily decline to consider matters not raised below (*Roberts Electric, Inc. v. Foundations & Excavations, Inc.,* 5 *N. J.* 426, 429 (1950)) has little application where, as here, we are confronted with a legislative enactment which embodies a public policy of our State which this court may justly enforce between the parties. *Cf. City of Newark v. Pulverman,* 12 *N. J.* 105, 108 (1953).

Zackowitz was not simply a broker or insurance adjuster but was a duly authorized agent of the company. See *R. S.* 17:22–6.1; *R. S.* 17:22–6.15. He not only solicited orders, delivered policies and collected premiums but actually countersigned the policies as "Authorized Representative" and until he did so they could not take effect. He had all the appearance of a general agent and the assureds could reasonably take him to be such. Notices of accident and suit

papers were invariably sent to him by the assureds who reasonably understood that he had power to receive them on the company's behalf; the defendant's position that the omission of reference to authorized agents in the requirement for delivery of suit papers (in contrast to its inclusion in the notice of accident requirement) constituted clear notification to the assureds that delivery of the suit papers to the agent was not permissible, credits ordinary lay assureds with interpretative ability far beyond that possessed by most lawyers. It is highly significant that at no time did the company ever suggest to Zackowitz that he had no authority to accept suit papers or that he should discontinue his long-standing practice of accepting them on the company's behalf. That he had the apparent authority to act as he did seems beyond question and it would impair the very integrity of the insurance policy and be shockingly unjust to permit the company, despite its long acquiescence, to deny responsibility because of an asserted lack of actual authority conforming with the apparent authority. Similarly, it would run counter to the interests of justice and fair dealing to permit the company, despite its failure to take any action whatever towards notifying the assureds, to assert that the agency had been terminated though to all outward appearances no termination had taken place. Since the material facts and reasonable inferences to be drawn therefrom were not in dispute, it became the duty of the trial court (*Mortgage Corporation of New Jersey v. Aetna Casualty & Surety Company, supra*) to construe the policy and determine whether there had been a breach of a policy condition not waived by the company. *Cf. Whittle v. Associated Indemnity Corp.*, 130 *N. J. L.* 576 (*E. & A.* 1943); *Kindervater v. Motorists Casualty Ins. Co.*, 120 *N. J. L.* 373 (*E. & A.* 1938). We are entirely satisfied that there was no such breach and that the Appellate Division's determination to the contrary was erroneous.

In *New Jersey Highway Authority v. Renner*, 18 *N. J.* 485 (1955), we recently had occasion to point out that since justice is the polestar our procedures must ever be moulded

and applied with that in mind. While the principles expressed in this opinion afford complete justice insofar as the assureds (and the plaintiffs Yannuzzis who claim through them) are concerned, a further procedural step is required to insure complete justice insofar as the Casualty Company is concerned. Through inadvertence the suit papers did not reach the attention of any responsible officials or employees of the company until after the plaintiffs had taken their default judgment against the Cherefkos who presumably had failed to answer in the mistaken belief that their interests were being adequately protected. When the company learned of the suit it caused application to be made on the Cherefkos' behalf to have the judgment reopened but the application was denied despite the very persuasive circumstances and the broad authority afforded by *R. R.* 4:62–2. See *Wilford v. Eisner,* 13 *N. J. Super.* 27, 33 (*App. Div.* 1951), where the court suggested that the power encompassed by *Rule* 3:60–2 (now *R. R.* 4:62–2) should "be freely exercised when the enforcement of a judgment would be unjust, oppressive or inequitable as to the party moving to vacate it." At the oral argument the plaintiffs Yannuzzis did not suggest prejudice to themselves and failed to advance any just reason for denying to the company the fair opportunity of defending on the Cherefkos' behalf in accordance with the policy undertaking. Accordingly, we have concluded that, upon renewal of the application for reopening of the default judgment, it shall be granted to the end that the proceeding between the plaintiffs Yannuzzis on the one hand and the Cherefkos defended by the Casualty Company on the other hand may justly be determined on its ultimate merits.

Reversed, with direction that the judgment entered in the trial court be set aside upon the reopening of the default judgment in the Middlesex County Court.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice WACHENFELD—1.