47 N.J. Super. 132 (1957)
135 A.2d 550
FIDELIS FACTORS CORPORATION, PLAINTIFF-RESPONDENT,
v.
DuLANE HATCHERY, LTD., A CORPORATION OF NEW JERSEY, ET AL., DEFENDANTS, AND NATHAN SINOWAY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 15, 1957.
Decided July 31, 1957.
*133 Before Judges HUGHES, PRICE and COOLAHAN.
Mr. Harry A. Margolis argued the cause for the plaintiff-respondent (Mr. Max L. Rosenstein, attorney).
*134 Mr. William E. O'Connor, Jr., argued the cause for the defendant-appellant Nathan Sinoway (Messrs. Novins & Novins, attorneys; Mr. Robert J. Novins, of counsel).
The opinion of the court was delivered by HUGHES, J.S.C. (temporarily assigned).
This appeal raises substantial questions of some difficulty. At the outset, we commend the practice followed by the learned judge of the Chancery Division in staying (for sufficient time to permit appeal and application for temporary appellate relief pending decision) that part of the judgment below which would have caused the arrest of the appellant upon the writ of capias ad satisfaciendum. This action was based upon the frank concession of the learned court below of doubt in reaching a basic conclusion of fact and its acknowledgment also of "close questions of law" underlying its decision. In these circumstances, particularly where human freedom is to be circumscribed in a case of manifest doubt, it is in the best tradition of our judicial philosophy that "* * * justice is the polestar * * *" (Yannuzzi v. United States Casualty Co., 19 N.J. 201 (1955)), that appellate review be accommodated to eliminate, insofar as can be done, the possibility of mistake.
We are conscious of similar doubts upon our examination of the record, which presents the following factual and legal situation:  On March 5, 1956, the defendant DuLane Hatchery, Ltd., a corporation, being indebted to United Feed Company, Inc., a corporation, executed and delivered a chattel mortgage to secure its note in the sum of $4,732.77, covering stipulated quantities of poultry assertedly owned by mortgagor. It is apparent from the record that this obligation was to secure an indebtedness already owing such mortgagee for the cost of feed and the like sold by it to mortgagor, and to induce a continued delivery of such items for the maintenance of its flocks of chickens. The appellant, as secretary of the corporate mortgagor, signed his name thereon after the word "attest" and opposite the signatures of defendants, Isaac Friedman and Jack Bartner, who had *135 executed this mortgage, under the corporate seal, as vice president and "chairman," respectively. This mortgage was duly recorded in conformity with the statute. On June 22, 1956, United Feed validly assigned this obligation to the present plaintiff, and due recordation thereof was had. There was default in payment provided for by the instrument and United Feed declined further sales of feed on credit. About July 18, 1956 Mr. Samuelson, president of United Feed, investigating personally at the premises of the DuLane Hatchery company, observed a scene of alarming inactivity and ascertained from a neighbor that a night or two before, several truckloads of chickens had been removed. Samuelson promptly alerted the assignee holder of the mortgage and on the following day he and its representative went to the DuLane Hatchery premises, saw Mr. Friedman, who was apparently in charge, and elicited from him an admission that all but a remnant of the poultry covered by the mortgage had been sold. His explanation offered in mitigation was legally immaterial and unnecessary of discussion here.
The assignee and present plaintiff filed its complaint on October 15, 1956 to foreclose the chattel mortgage and for other relief, including the appointment of a receiver in the foreclosure. In separate counts against each of the individual defendants, plaintiff charged them, respectively, with fraudulent and unlawful participation by instigation, aid and assistance in the fraudulent and unlawful conversion by DuLane Hatchery, Ltd. of the property affected by the chattel mortgage and on the basis thereof sought money judgments in fraud and other relief, including the issuance against such respective parties of writs of capias ad satisfaciendum. All defendants were served but failed to appear or answer, and the court took testimony ex parte on the basis of such default. As a result, judgment was entered on December 21, 1956 for the amount due on the mortgage, in fraud, against the corporate and the three individual defendants. Additionally, the court ordered the issuance of writs of capias against Friedman and Sinoway. The transcript of the proofs taken incident to the entry of that judgment indicated that *136 the court initially felt that while the evidence established the responsibility of Friedman for "* * * managing and disposing of the property * * *," so that the capias should issue against him, the evidence was insufficient so to implicate Bartner and Sinoway. Plaintiff's attorney did not persist in seeking such relief against Bartner, but urged the court to reconsider as to Sinoway, and the court, on its own motion, took further proofs which led it to the determination that the capias should also be ordered against the latter. The writ issued in obedience to this judgment against Sinoway on December 26, 1956, and he soon moved to set aside the judgment against him on grounds of mistake and excusable neglect, as contemplated by R.R. 4:62-2 (arising from proofs touching upon the financial collapse of the operation, including the intended bankruptcy of DuLane Hatchery, Ltd., asserted confusion on the part of Sinoway as to his position in facing the various claims being made, and inconclusive conversations had by him with a Mr. Briggs of a firm of attorneys), and the existence of a meritorious defense to the action. Counter proofs by affidavit were filed and the court directed another hearing, at which it heard anew the opposing versions of fact bearing upon the implication of Sinoway in acts which would justify the issuance as to him of a capias order.
In doing so it was the obvious intention of the learned court to reopen the issue as to the culpable participation of Sinoway in whatever fraudulent acts were deemed to justify the original issuance of the writ of capias. We reach this conclusion by reference to the court's findings of fact and conclusions of law gleaned from his recitation of same from the bench and incorporated as well in his order of March 5, 1957 denying the motion to vacate the judgment. Aside from the judgment as a whole, reflecting as it did an award of money damages against the corporate and three individual defendants, we perceive quite clearly that the court considered and determined de novo the implication of Sinoway on the question of the propriety of seizing him on capias. We quote from the court's verbal decision:
*137 "The Court: My findings are as follows: This is, in effect, an application to reopen or set aside a judgment already entered ex parte in this cause, a judgment based upon oral proof in this court by Mr. Rosenstein through witnesses of his client. So that the findings, although technically are for the purpose of reopening a judgment, as a result of hearings had before this court I must assume that the entire litigation is before the court even as if there had been no final judgment. * * *"
The court then proceeded to analyze the factual connection of Sinoway with the transaction, determining although "* * * concededly in doubt as to this question * * *" that Sinoway was not a mere ministerial party to the chattel mortgage by the manner in which he signed it, but a culpable participant in acts encompassed by the capias statute. Although finding that he was negligent in not defending the litigation initially (cf. R.R. 4:62-2, supra), this fact was not the determinative basis for the court's decision, for he said from the bench:
"* * * And finally the court finds that both defendants were negligent in the protection of their interests in not obtaining an attorney to defend the action.
I must stress that the latter point, or this point is not the main and persuasive point in my determinations. I understand the annoying habits of laymen of not calling in counsel until it is too late. We, as judges and attorneys, feel at times inclined to punish such litigants for their actions, but I want to reiterate that my finding with reference to this last point is only one in passing and it is not a point which I use to bottom my previous determinations on. I am not persuaded to make the previous findings by the fact that they did not listen to Mr. Briggs' advice, and for the purposes of this record I must find that Mr. Briggs' affidavit contains statements of fact with which this court agrees. * * *"
That the court considered the motion to vacate the judgment in dual aspect is evident from the recital in the order of March 5, 1957, in which it characterized them as "* * * their respective motions for an order vacating the judgment entered against said defendants respectively and to quash the writ of capias issued against said defendants respectively. * * *"
The same recital re-established with certainty the court's view that it, in effect, had reopened the judgment and was *138 passing anew upon the merits, for nothing else could be the import of this language therein:
"* * * the Court having considered the affidavits in respect to said motion submitted on the part of the parties respectively, and having taken testimony in open Court on the part of all of the parties to this cause with respect to the subject matter thereof, with the same force and effect as if the entire litigation were before the Court as if there had been no final judgment; * * *." (Emphasis supplied)
It is apparent, then, that the instant appeal projects for our consideration (at least with respect to that part of the judgment affecting Sinoway and particularly the determination that a capias should issue against him), not whether the learned court below abused its discretion to act under R.R. 4:62-2, supra (cf. LaBell v. Quasdorf, 116 N.J.L. 368 (Sup. Ct. 1936); Pizzi v. Baker, 21 N.J. Super. 438 (App. Div. 1952)), but whether on the proofs before the court there was sufficient basis for the direction that a writ of capias should issue. While the final order of the learned court below, in its form, amounted to a refusal to reopen its previous default judgment, which would subject it to one type of challenge on appeal, it was quite plainly the intention of the court that it reflect, in substance, a redetermination on the merits, of the comparative culpability of Sinoway. Our Supreme Court recently has reminded us that the subordination of technical or procedural form to the substance of justice is essential if justice is to be the "polestar." New Jersey Highway Authority v. Renner, 18 N.J. 485 (1955); Yannuzzi v. United States Casualty Co., supra.
As to that part of the judgment below awarding damages against the three corporate officers, we find that the same was unassailable, in the light of the circumstantial evidence linking them with the conduct of the corporation's affairs, and the elements of negligence bearing upon their individual civil responsibility for the disappearance and conversion of the security which the corporation had pledged under the mortgage. Hirsch v. Phily, 4 N.J. 408 (1950).
*139 This leaves for consideration that part of the appeal challenging the sufficiency of the proofs to justify the capias order. We are not concerned here with the propriety of this writ in a tort action, for the respondent concedes that such would not be justified without proof of a "wilfull and malicious act" on the part of Sinoway which, by necessary implication, is not claimed. The respondent asserts as authority for his position the statutory right to the issuance of the writ in contract actions based upon the following provisions:
N.J.S. "2A:17-78. Issue of writ on judgments founded on contract
A capias ad satisfaciendum shall not issue on a judgment founded upon contract, express or implied, except:

* * * * * * * *
b. When due proof is made to the court, establishing:
1. The facts on which an order to hold to bail could issue under the provisions of section 2A:15-42 of this title; or * * *." N.J.S. "2A:15-42. Capias; grounds in action founded upon contract.
A capias ad respondendum shall issue in an action founded upon contract, express or implied, due to plaintiff from defendant, only when the proof establishes the particulars specified in one or more of the following subparagraphs:

* * * * * * * *
c. That defendant has assigned, removed or disposed of, or is about to assign, remove or dispose of, any of his property with intent to defraud his creditors; or * * *."
Assuming, in law, the bridge of corporate responsibility necessary to make the corporate officers answer in damages (Hirsch v. Phily, supra) and assuming, in fact, that the abrupt disappearance of the security under the circumstances constituted a conversion by the corporation of the security, it nevertheless remains an indispensable element that the proof establish the assignment, removal or disposition by the debtor of his property with intent to defraud his creditors. It is essential, therefore, to consider whether the appellant was shown to have participated, either directly or as an aider, abettor or accessory in the relevant act of removal or disposition of the property. In this respect, and distinguished from a civil responsibility for damages, the amenability of the defendant to arrest on capias depends *140 on elements more akin to that of criminal responsibility, which of course can exist where the corporate officer is a full and knowing participant in the transaction, particularly when his is the "executing mind" for the corporation in respect thereto. State v. Pincus, 41 N.J. Super. 454 (App. Div. 1956).
The evidence here falls short of this level of proof. The testimony showed the acknowledgment by Friedman that his was the executing mind in the whole transaction and acquitted the appellant of active participation or management in the business in general and in the execution of the chattel mortgage and the sale of the security in particular. The factual and inferential totality of the proofs does not connect the appellant in any way with the dissolution of the security, nor in fact with the execution of the mortgage except as an attesting officer. Whether his act in signing the mortgage was ministerial or otherwise does not control on this issue. His formal status as secretary, treasurer and member of the board of managers of the corporation adds nothing to his knowledge of any misstatement of assets (of which scienter there was no other evidence) pledged as security under the mortgage, nor, except as to negligence in fulfilling his responsibilities as a corporate officer, in the misapplication of that security underlying the judgment.
Under all of the circumstances, we determine that the order for issuance of the writ of capias ad satisfaciendum against the appellant, Nathan Sinoway, was unsupported by the evidence, and that such part of the judgment of the learned court below, but that only, should be reversed. The remaining portion of the judgment is affirmed.