189 N.J. Super. 141 (1983)
458 A.2d 1341
JOSEPH H. REINFELD, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
GRISWOLD AND BATEMAN WAREHOUSE CO., A DELAWARE CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division Union County.
Decided January 28, 1983.
*142 Sidney Berg for plaintiff.
Carol A. Noer for defendant (Francis & Berry, attorneys).
GRIFFIN, J.S.C.
While the product involved in this case is not unique in New Jersey, the legal issue is.
*143 Three hundred and thirty-seven cases of Chivas Regal Scotch Whiskey were stored for plaintiff Reinfeld by defendant Griswold and Bateman in its bonded warehouse. A proper warehouse receipt was issued. After complying with governmental tax and duty requirements, Reinfeld sent its truck to pick up the merchandise. Forty cases were missing. Plaintiff sued in both negligence and conversion for the wholesale market value of the whiskey, $6,417.60. Plaintiff presented evidence of his delivery, demand and the subsequent failure by defendant to return the bailed goods. Plaintiff then claimed that the burden of producing evidence shifted to defendant to explain the disappearance. Defendant claimed that plaintiff's prima facie case had only raised the presumption of negligence. Defendant admitted liability for negligence and asserted a limit by contract to 250 times the monthly storage rate, a total of $1,925.
N.J.S.A. 12A:7-204(2) permits a warehouseman to limit his liability for negligent "loss or damage" to the bailed goods if stated in the storage agreement. The statute reads: "No such limitation is effective with respect to the warehouseman's liability for conversion to his own use." (Emphasis supplied). Since plaintiff had sued in both negligence and conversion, plaintiff argued that without an explanation of the disappearance of the goods by defendant, plaintiff's prima facie case raised a presumption of both negligence and conversion. Therefore, the contractual limitation on liability would not apply.
As hereinafter set forth, an inadvertent misdelivery is a conversion. Can a bailee simply refuse to explain a disappearance and then have his liability limited by N.J.S.A. 12A:7-204? If so, what will prevent a dishonest warehouseman from stealing the goods entrusted to his care and then saying, "I don't know what happened but I admit my negligence." He would then pay only the amount limited by contract and pocket the difference.
A bailee who accepts responsibility for goods should have the burden of producing evidence as to the fate of those goods. To hold otherwise would place an impossible burden on a plaintiff. *144 How is a plaintiff to present sufficient evidence of conversion when knowledge of the fate of the goods is available only to defendant? This court holds that plaintiff has presented a prima facie case of conversion and the burden of going forward or producing evidence as to what happened to the whiskey shifts to defendant.
This position is supported by language in Mueller v. Technical Devices Corp., 8 N.J. 201, 207 (1951): "A demand and refusal do not of themselves amount to a conversion, but are evidence from which a jury may find that a conversion had been committed."
This issue was addressed by the New York Court of Appeals in I.C.C. Metals, Inc. v. Municipal Warehouse Co., 431 N.Y.S.2d 372, 50 N.Y.2d 657, 409 N.E.2d 849 (1980).
In I.C.C. plaintiff delivered metal to be stored by defendant. The storage contract contained a limitation on liability. Upon demand, defendant informed plaintiff that the metal had been stolen "through no fault of defendants," 431 N.Y.S.2d at 375, 50 N.Y.2d at 662, 409 N.E.2d at 852, so liability was limited by the contract terms. The court held that unless a bailee can "make a sufficient showing in support of its suggested explanation of the loss," the bailee is liable for conversion and the contractual limitation does not apply. 431 N.Y.S.2d at 376-77, 50 N.Y.2d at 665, 409 N.E.2d at 853-54. The explanation proffered by the warehouse in such a case must be supported by sufficient evidence and cannot be merely the product of speculation and conjecture. "It is not enough to show that defendant bailee used reasonable care in its system of custody if mysterious disappearance is the only `explanation' given." Footnote 3, 431 N.Y.S.2d at 377, 50 N.Y.2d at 665, 409 N.E.2d at 854. (citation omitted). This ruling by the court was predicated on "practical necessity" since it is the bailee who is in the best position to explain the loss of the property. 431 N.Y.S.2d at 377, 50 N.Y.2d at 665, 409 N.E.2d at 854.
Thus, the burden of producing evidence is shifted to defendant, but the burden of proof that the bailee is at fault or that *145 conversion or negligence exist remains on the bailor. 431 N.Y.S.2d at 379, 50 N.Y.2d at 668, 409 N.E.2d at 856. As the New York court stated, the holding of I.C.C. does not indicate "that proof of negligence will support a recovery in conversion." Footnote 4, 431 N.Y.S.2d at 377, 50 N.Y.2d at 665, 409 N.E.2d at 854. Rather, once the bailee has produced evidence, plaintiff must then prove "all the traditional elements of conversion." Id.
This position finds support in other jurisdictions as well. In McCallister v. Cord Moving & Storage Co., 301 S.W.2d 852, 855 (Mo. App.Div. 1957), the court held that delivery by the bailee of 25 television sets to a third party constituted conversion. The court stated that the burden of proof was on the bailor to show title and right to possession. Then the burden shifted to the bailee to justify or excuse his failure to return the bailed goods. When the bailee failed to meet this burden, he was held for conversion.
The Arkansas Supreme Court in American Express Field Warehousing Corp. v. First National Bank, 233 Ark. 666, 346 S.W.2d 518, 521-522 (1961), stated:
When the bailor sues the bailee for conversion of the bailment, the bailor has the duty of proving (a) that the bailment was delivered to the bailee, (b) that due and seasonable demand was made on the bailee for the return of the bailment and (c) that the bailee could not or would not return the bailment. When the bailor proves these three points, the law says that the bailee had converted the bailment unless the bailee goes forward with the proof and shows either (1) that the bailment was destroyed by fire without the negligence of the bailee, or (2) that the bailment was lost or stolen from the bailee without the negligence of the bailee.
The Supreme Court of California held that the bailor presents a prima facie case of conversion when he proves a bailment and subsequent refusal to return the bailed goods on demand. The burden of proving the fate of the goods and that the bailee had exercised due care is on the bailee. George v. Bekins Van & Storage, 33 Cal.2d 834, 205 P.2d 1037 (1949). In that case the defendant proved that the goods were destroyed by fire and the court found the bailee was negligent, but did not convert. *146 Accord, Allen v. Line, 72 S.D. 392, 34 N.W.2d 835 (S.D.Sup.Ct. 1948); 26 A.L.R., Bailment-Theft, § 223 at 243. See, also, 8 Am.Jur.2d, § 328 at 1065-1066.
Defendant argues that I.C.C. should not be adopted because it was not used to interpret maritime law by the New York courts in Clairol, Inc. v. Moore-McCormack Lines, Inc., 76 A.D.2d 297, 436 N.Y.S.2d 279, 280-281. (App.Div. 1981). In that case plaintiff sued for the full value of curlers lost after they were unloaded but before delivery to plaintiff. The court stated: "At this point in time the Federal Courts have not yet adopted the reasoning in I.C.C. ... Until the Federal Courts have addressed themselves to this question, it would be premature for the Court to conclude that I.C.C. Metals forms a part of general maritime law." However, the federal court in Philipp Bros. Metal Corp. v. S.S. Rio Iguazy, 658 F.2d 30, 32 (2 Cir.1981), in applying maritime law in the loss of bailed goods, stated that defendant had failed to explain the loss and would be liable for both negligence and conversion. To support the conversion decision, the court cited I.C.C.
Thus, this court holds that to earn the protection of N.J.S.A. 12A:7-204(2), defendant must meet his burden of explaining the disappearance or be held liable for conversion. If defendant meets this burden, then the burden of proof that conversion or negligence exists shifts back to plaintiff.
After the court's ruling defendant produced evidence of three possible explanations: United States Customs officials had been convicted of theft from the warehouse; some goods had been confiscated by the United States Customs Department, and there had been misdeliveries by warehouse employees.
The court, as trier of the fact, found that misdelivery was the most probable.
Misdelivery due to negligence is conversion. Restatement, Torts 2d, § 234, provides:

*147 Conversion as Against Bailor by Misdelivery.
A bailee, agent, or servant who makes an unauthorized delivery of a chattel is subject to liability for conversion to his bailor, principal, or master unless he delivers to one who is entitled to immediate possession of the chattel.
Comment "a" applies this section to bailees who make unauthorized delivery by "mistake or otherwise." Therefore, under the Restatement, mere misdelivery does constitute conversion. New Jersey follows this well settled law. See Winkler v. Hartford Acc. & Ind. Co., 66 N.J. Super. 22, 27 (App.Div. 1961), and Mueller v. Technical Devices Corp., supra.
Plaintiff's proofs of delivery, demand and failure to return the goods raised a prima facie case of conversion. The evidence which defendant then produced not only failed to meet this case, but established that there was a prior misdelivery. Defendant falls within the exception to the limitation of liability contained in N.J.S.A. 12A:7-204(2) because the property was converted by misdelivery. Hence, plaintiff is entitled to the market value of the whiskey, which is $6,417.60 together with interest and costs.