279 N.J. Super. 372 (1995)
652 A.2d 1238
CHARLES BLOOM & COMPANY, PLAINTIFF-APPELLANT,
v.
ECHO JEWELERS AND MARK & RICHARD WHOLESALE JEWELERS, DEFENDANTS, AND MARK LAMOTTA AND RICHARD JADOS, A/K/A RICHARD DIADJODOS[1], T/A ECHO JEWELERS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 3, 1995.
Decided February 1, 1995.
*375 Before Judges DREIER, VILLANUEVA and BRAITHWAITE.
Methfessel & Werbel, attorneys for appellant (Anthony P. Pasquarelli, of counsel and on the brief).
John Feniak, attorney for respondent (Jill A. Judge, of counsel and on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Plaintiff appeals from a finding of no cause of action against the two individual defendants who allegedly converted plaintiff's diamonds. We reverse and remand to the trial court for further proceedings.
Plaintiff, Charles Bloom and Company, was and is a sole proprietorship engaged in the business of wholesale diamond sales. Defendants, Mark LaMotta and Richard Gziadosz, were the owners and joint operators of a retail jewelry store known as Echo Jewelers. Defendants were the sole shareholders and officers of Echo Jewelers, Inc., which was incorporated on June 2, 1976. Whether or not this entity was a proprietorship or corporation is immaterial as stated infra.
In 1985, plaintiff entered into a business relationship with defendants, Mark LaMotta and Richard Gziadosz (defendants) at Echo Jewelers. Plaintiff would deliver certain diamonds to Echo Jewelers on a "memorandum." Each memorandum contained a description of each diamond submitted to defendants as well as the weight and the wholesale price of the diamonds. The memorandum served as evidence of the terms of delivery of the diamond to Echo Jewelers and stated on its face:
The goods described and valued as below are delivered to you for EXAMINATION AND INSPECTION ONLY and are the property of CHARLES BLOOM AND COMPANY and subject to their order and shall be returned to them on demand. Such merchandise, until returned to them and actually received, are at your risk from all hazards. NO RIGHT OR POWER IS GIVEN TO YOU TO SELL, *376 PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS MERCHANDISE regardless of prior transactions. A sale of this merchandise can only be effected and title will pass only if, as and when the said CHARLES BLOOM AND COMPANY shall agree to such sale and a bill of sale rendered therefor.
This is a stock form used in the jewelry business. A memorandum has four copies. A white copy, the original kept by plaintiff, the yellow would go to defendants, the pink copy would be in a numerical binder and the gold copy is for a salesperson who would be with plaintiff. When a memorandum or an item on the memorandum was paid for, plaintiff would return the white copy and defendants would rip it up.
Pursuant to the memorandum, which described the size, weight, and wholesale price of each item delivered by plaintiff to defendants, the parties agreed that title to the diamonds remained in the plaintiff and that the risk of loss remained with defendants until the diamonds were returned to plaintiff or when title passed and only if plaintiff agreed to a sale made by defendants to the third parties. The terms of the memorandum were that Echo Jewelers could not sell or otherwise dispose of the merchandise or pass title unless plaintiff consented to a sale and rendered a bill of sale therefor. It was agreed that plaintiff retained title to the diamonds but gave possession and limited control to the defendants.
Although each memorandum[2] was made out to "Echo Jlrs.", defendants signed the memoranda without any reference to their *377 alleged corporate capacity as officers of Echo Jewelers, Inc. Plaintiff claims that the only evidence submitted to it that Echo Jewelers may have been a corporation were occasional checks submitted to the plaintiff as payment for its diamonds issued by Echo Jewelers, Inc. However, the checks were signed by defendants without any indication of their corporate capacity as officers of the corporation. The majority of business transactions between plaintiff and defendants consisted of cash transactions and third party checks which were indorsed by defendants and handed over to plaintiff.
During the course of business between plaintiff and defendants, plaintiff released diamonds on memoranda to defendants at Echo Jewelers. If Echo Jewelers did not sell the diamonds, the diamonds were to be returned to the plaintiff. If Echo Jewelers sold the diamonds, plaintiff prepared an invoice indicating the stones which were sold.
Mark LaMotta acknowledged that if defendants did not sell the diamonds they were to be given back to plaintiff "until they were converted to an invoice."
During the years 1985 to 1990, Echo Jewelers continually accepted diamonds from plaintiff on memorandum. Defendants apparently kept many of the diamonds and incorporated them into jewelry without paying for them. Furthermore, defendants could not disclose the whereabouts of many of the diamonds that were left at Echo Jewelers on consignment.
It was not plaintiff's practice in his dealings with Echo Jewelers to invoice them for items given to them on memorandum. However, beginning on April 5, 1990, plaintiff did invoice Echo Jewelers for the subject memoranda dated in years 1986 and 1987 because when plaintiff asked for the stones defendants said "they wanted an invoice for it. They said `bill me'". Plaintiff acknowledged that "these memorandum (sic) were converted into an invoice." Plaintiff made no further deliveries after May 4, 1990. It was then that plaintiff first asked for interest retroactive to 1988.
*378 Throughout the course of dealing while doing business with Echo Jewelers, Mark LaMotta and Richard Gziadosz, plaintiff has continually contended that he was conducting business with Mark LaMotta and Richard Gziadosz individually and not with the corporation Echo Jewelers. Significantly, there is a noticeable absence of recording of transactions between plaintiff and Echo Jewelers, Inc. in the Echo Jewelers, Inc. accounting ledger.
Payments made on behalf of Echo Jewelers were deducted from the outstanding bill rather than a specific memorandum. Plaintiff began assessing a finance charge in 1990 against Echo Jewelers' account. In or around January 1991, plaintiff requested the return of the items delivered under the memoranda. Defendants no longer had the stones, claiming "they got eaten up in the course of doing business ... over the years" by being used in repairs or settings. The last payment that plaintiff received from defendants was on March 29, 1991.
On or about June 26, 1991, plaintiff filed a complaint against defendants Echo Jewelers, Mark LaMotta, Richard Jados, a/k/a Richard Diadjodos, individually and t/a Echo Jewelers and Mark and Richard Wholesale Jewelers seeking damages in the amount of $26,079.10, $18,179.10 representing the value of the converted diamonds and a finance charge of $7,900 (calculated from 1988) together with interest, costs and attorney's fees, for conversion of certain diamonds allegedly submitted to defendants on memorandum "for examination and inspection only." All defendants except Echo Jewelers filed one answer.
On or about January 28, 1992[3], defendant Echo Jewelers, Inc. filed for bankruptcy. After receiving notice from the Bankruptcy Court that plaintiff was a creditor of Echo Jewelers, Inc., plaintiff met with the trustee appointed by the Bankruptcy Court. At that *379 time, plaintiff discovered that he was not listed as an account payable of Echo Jewelers, Inc. and requested that its debt be excepted from the debtor's general discharge. Despite plaintiff's request, however, the debt was discharged in the bankruptcy proceedings. Plaintiff continued his law suit against defendants personally.
During a non-jury trial at the close of plaintiff's case, all claims against defendants Mark and Richard Wholesale Jewelers were dismissed with the consent of plaintiff. After the trial, the judge, in a letter opinion, ruled that plaintiff had failed to establish a cause of action against defendants Mark LaMotta and Richard Gziadosz and, therefore, they were not personally liable.
The trial court denied plaintiff's request to amplify its findings after plaintiff contended that the judge wrongfully based his opinion on the standard for "piercing the corporate veil," a claim which plaintiff asserts it never raised. The judge did not address the issue of conversion, even when plaintiff's attorney by letter requested him to do so after he rendered his opinion.

I.
Plaintiff appeals arguing that: (1) defendants' act of failing to return diamonds delivered to them by plaintiff on "memorandum" was a conversion; (2) the individual defendants are personally liable for converting the diamonds; and (3) the court erred in failing to apply the totality of the circumstances test provided in the case of Taylor Oil Co. v. Giordano, 210 N.J. Super. 159, 509 A.2d 269 (App.Div. 1986), when determining whether or not plaintiff was provided with adequate notice of the corporate status of Echo Jewelers, Inc.
Defendants contend that they were acting lawfully in their corporate capacity as officers of the corporation known as Echo Jewelers, Inc. when they accepted the diamonds on memorandum and therefore are not personally liable to plaintiff. Defendants also argue that plaintiff transferred the memoranda to an account *380 and the defendants received an invoice for the merchandise, thereby creating a sale on credit.

II.
The trial judge erred in finding that this action was "to collect on a debt." Furthermore, he erroneously focused on when corporate officers are personally liable for corporate debt when plaintiff was primarily alleging a bailment and conversion. The judge failed to address these latter issues.
A bailment is created when a diamond dealer and wholesaler consigns diamonds to a jeweler on "memorandum," "to enable [the jeweler] to show them to a prospective purchaser and if the latter bought, to deliver them to such purchaser and to collect the retail price, paying the [dealer]/bailor the wholesale or dealer's price, and retaining the difference between these prices as his own profit; but if the `prospect' does not purchase, then to return the diamonds to the bailor." Kittay v. Cordasco, 103 N.J.L. 156, 157, 134 A. 667 (E. & A. 1926). As noted earlier, one definition of consignment is a "bailment for sale." Black's Law Dictionary, 307 (6th Ed.).
The bailee's disposition of bailed property without authority constitutes a breach of the bailment agreement and a conversion. Winkler v. Hartford Accident & Indemnity Co., 66 N.J. Super. 22, 27, 168 A.2d 418 (App.Div.), certif. denied, 34 N.J. 581, 170 A.2d 544 (1961). "The gist of an action in trover is conversion, that is, the exercise of any act of dominion in denial of another's title to the chattels or inconsistent with such title." Mueller v. Technical Devices Corp., 8 N.J. 201, 207, 84 A.2d 620 (1951). In a bailment for mutual benefit, as here, "the bailee is liable to the bailor for failure to exercise reasonable care for the safekeeping of the subject of bailment which results in its loss or damage thereto." Rodgers v. Reid Oldsmobile, Inc., 58 N.J. Super. 375, 380, 156 A.2d 267 (App.Div. 1959) (citing Kittay v. Cordasco, supra).
*381 To constitute an act of conversion, "[i]t is sufficient if the owner has been deprived of his property by the act of another assuming an unauthorized dominion and control over it. It is the effect of the act which constitutes the conversion." McGlynn v. Schultz, 90 N.J. Super. 505, 526, 218 A.2d 408 (App.Div. 1966) (quoting 89 C.J.S. § 7 at pp. 536-37), aff'd, 95 N.J. Super. 412, 231 A.2d 386 (App. Div.), certif. denied. 50 N.J. 409, 235 A.2d 901 (1967).
"A bailee who accepts responsibility for goods should have the burden of producing evidence as to the fate of those goods. To hold otherwise would place an impossible burden on plaintiff." Joseph H. Reinfeld, Inc. v. Griswold & Bateman Warehouse Co., 189 N.J. Super. 141, 143, 458 A.2d 1341 (Law Div. 1983). In the instant case, defendants could give no explanation as to the whereabouts of plaintiff's diamonds after plaintiff provided sufficient evidence of conversion by submitting documentary evidence by way of memoranda of goods entrusted to defendants. The only explanation given by defendants as to the whereabouts of the subject diamonds was that the diamonds were "eaten up in the course of business." Said testimony clearly evidences the conversion of the subject goods to defendants' own use and for personal gain if title was still in plaintiff. Plaintiff's proof of delivery, demand and failure to return the goods raised a prima facie case of conversion. Id. at 147, 458 A.2d 1341. But we do not know when the alleged conversion took place. In fact, defendants' actions could constitute an indictable offense of theft by failure to make required disposition of property received, N.J.S.A. 2C:20-9.
Any corporate officer, or director who participates by aid, instigation, or assistance in a conversion, is liable. Fidelis Factors Corp. v. DuLane Hatchery, Ltd., 47 N.J. Super. 132, 139-40, 135 A.2d 550 (App.Div. 1957). A director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character, but, a director or officer who commits a tort, or who directs the tortious act to be done, or participates or cooperates therein, is liable to third persons injured *382 thereby, even though liability may also attach to the corporation for the tort. Sensale v. Applikon Dyeing & Printing Corp., 12 N.J. Super. 171, 175, 79 A.2d 316 (1951); see also McGlynn v. Schultz, 90 N.J. Super. 505, 527, 218 A.2d 408 (App.Div. 1966) (quotation omitted), aff'd, 95 N.J. Super. 412, 231 A.2d 386 (App. Div.), certif. denied, 50 N.J. 409, 235 A.2d 901 (1967). Corporate officers are liable to persons injured by their own torts, even though they were acting on behalf of the corporation and their intent was to benefit the corporation. Robsac Industries, Inc. v. Chartpak, 204 N.J. Super. 149, 156, 497 A.2d 1267 (App.Div. 1985); see also McGlynn v. Schultz, supra.
Defendants Mark LaMotta and Richard Gziadosz contend that throughout their business relationship with plaintiff they were acting in their capacity as officers or directors of the corporation known as Echo Jewelers, Inc. There is substantial credible evidence in the record to support the judge's finding that there was "sufficient evidence to justify imputing knowledge of the corporation to the plaintiff." See Rova Farms Resort v. Investors Insurance Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). Even if defendants Mark LaMotta and Richard Gziadosz were acting in their corporate capacity when they received the diamonds, they could still be liable to plaintiff for their unlawful disposition of the diamonds. The individual defendants are not being charged with unlawfully accepting the diamonds, but rather the subsequent conversion of them. Therefore, we do not address when agents or officers are individually liable for corporate debts, when a plaintiff can pierce the corporate veil or the applicability of Taylor Oil Co. v. Giordano, supra.

III.
While consignment of the diamonds to Echo Jewelers might previously have been considered a bailment, see Kittay v. Cordasco, supra, at 157, 134 A. 667, and indeed is a type of bailment, the rights of contracting parties have since been refined and explained in the Uniform Commercial Code, N.J.S.A. 12A:1-101 et seq. The *383 consignment in this case fits within the definition of a "sale or return" or possibly a "sale on approval" governed by N.J.S.A. 12A:2-326 and 327. (If the claim were made between the consignor and a third party, the property rights of the consignor would also be affected by N.J.S.A. 12A:9-114 and 12A:2-326(3)).
The diamonds were used in settings and then sold to third parties or converted, therefore, it is difficult on this record to determine whether the consignments were predominantly sales on approval or sales on return. According to N.J.S.A. 12A:2-326(1) the former term is to be employed "if the goods are delivered primarily for use," and the latter term "if the goods are delivered primarily for resale."
Since plaintiff claims that defendants individually converted the diamonds, we must initially determine whether title to the diamonds had passed to Echo Jewelers, or whether title remained with plaintiff. If, contrary to the terms of the memorandum, title was in Echo Jewelers at the time of the alleged conversions, then there would have been no conversion, but plaintiff would merely have an account receivable for the price of the gems. N.J.S.A. 12A:2-327 provides different answers to our question depending upon whether the consignment was a "sale on approval," a "sale or return," or if the parties "otherwise agreed." We will first explore the general rules applicable to both types of consignment, and then determine whether the parties had "otherwise agreed," see N.J.S.A. 12A:1-102(3), N.J.S.A. 12A:2-303 and 327, in which case these rules may be varied.
If the consignment was a sale on approval, unless otherwise agreed, title passes upon acceptance of the goods by the buyer. N.J.S.A. 12A:2-327(1)(a). There was no question that the diamonds received on trial were not found defective, therefore, they must be considered conforming goods and acceptance of any of them became acceptance of the whole consignment. Thus, if these were sales on approval, as Echo Jewelers used any of the diamonds within each consignment, unless otherwise agreed, it would *384 be deemed to have accepted that consignment and title would have passed to Echo Jewelers.
If this was considered a sale or return, in that the diamonds were considered as being held by Echo Jewelers for resale, the option to return existed only while the diamonds remain substantially in their original condition, therefore, once they were incorporated into settings, the option was extinguished and the sale was effectuated. N.J.S.A. 12A:2-327(2)(a).
The memorandum, however, provided different terms. While the actual transaction appears to be more of a sale or return, the memorandum apparently described a modified sale on approval, i.e., "for examination and inspection only." Notwithstanding the provisions of N.J.S.A. 12A:2-327, the agreement stated that title did not pass until plaintiff agreed to a sale and delivered a bill of sale. We cannot determine from the trial record, however, when the alleged conversions occurred. The diamonds were consigned to Echo Jewelers over a period of five years, but apparently the only gems in dispute were governed by memoranda dated 1986 and 1987. Plaintiff apparently never asked for a return of the gems until January 1991, and previously had agreed in 1990 to bill Echo Jewelers when plaintiff in fact assessed a finance charge on the unpaid total balance. This could indicate that plaintiff, as of April 5, 1990, considered that the items described in the 1986 and 1987 memoranda had been sold to Echo Jewelers, with title passing, so that plaintiff had only accounts receivable. Any prior rights to the physical return of the gems could also be deemed waived unless a security interest was retained.
On the other hand, Echo Jewelers or the individual defendants may have already converted the diamonds at the time invoices were sent, and the billing for the unpaid balance may have been only as a convenience to defendants, as plaintiff testified. If that were so, there were no goods to sell. The billing may not have waived any vested rights of plaintiff. A waiver requires the intentional relinquishment of a known right. West Jersey Title & Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, *385 152, 141 A.2d 782 (1958). If plaintiff did not know that the stones had already been converted, plaintiff's mere billing of Echo Jewelers for the balance due may not have relinquished any rights plaintiff had against the jewelers and any individual tortfeasors.
The trial judge's findings do not resolve the issues applicable to plaintiff's conversion claims. The fact that the court did not pierce the corporate veil in no way absolves the individual defendants of potential liability for conversion, a legal theory that was urged upon the court by plaintiff. No findings were made concerning when the diamonds were appropriated, and no factual findings were made concerning plaintiff's knowledge of any extant conversions when the items were billed as goods sold and delivered. Such findings should be made on remand, perhaps supported by any such supplementary proof as the parties might offer or that may be called for by the court.
That leaves us with the responsibilities of the two individual defendants. It is clear from the position they have taken in the record that they jointly participated in the business and would therefore be jointly and severally liable for the alleged conversion. They have not questioned the value of $18,179.10 for the diamonds that they failed to return. If plaintiff prevails on its tort claim of conversion, finance charges are not applicable because R. 4:42-11(b) establishes when prejudgment interest in tort actions is awardable and the rate thereof.
Reversed and remanded to trial court for further proceedings consistent herewith. We do not retain jurisdiction.
NOTES
[1] There are various spellings of this defendant's name throughout the pleadings and briefs. At trial, however, he spelled his name for the court "Gziadosz."
[2] Plaintiff states that each memorandum is evidence of a consignment of the diamond described therein to defendants. "Consignment" is a broad term with a variety of meanings:

"The act or process of consigning goods, the transportation of goods consigned; an article or collection of goods sent to a factor; goods or property sent, by the aid of a common carrier, from one person in one place to another person in another place; something consigned and shipped. Entrusting of goods to another to sell for the consignor. A bailment for sale. The term `consignment', used in a commercial sense, ordinarily implies an agency and denotes that property is committed to the consignee for care or sale."
Black's Law Dictionary, 307 (6th Ed. 1990); citations omitted.
[3] There seems to be a discrepancy as to when the bankruptcy proceeding was filed. According to the trial transcript, Echo Jewelers, Inc. filed for bankruptcy on January 28, 1992; however, in the judge's letter opinion, he states that Echo Jewelers, Inc. filed for bankruptcy in 1991.