Watson *v.* Rowley.

AUSTIN H. WATSON et al.

*v.*

EDWARD H. ROWLEY et al.

[Filed May 10th, 1902.]

1. Under the Chattel Mortgage act, declaring chattel mortgages, where the mortgagor retains possession of the property, absolutely void, unless accompanied by an affidavit made by the holder of the mortgage or his agent stating the true consideration for the mortgage, it must appear in the affidavit that the affiant is the holder of the mortgage or his agent or attorney.

2. A valid affidavit cannot be made by the holder's agent or attorney unless the agency and power to represent the holder relate to the holding of the mortgage.

3. The mortgagor cannot act as the agent of the holder, at least as long as the former retains his interest in the property.

4. Under *P. L. of 1899 ch. 54 § 15,* a chattel mortgage given by the assignor, and void as against creditors for failure of the holder of the mortgage to make the affidavit required by the Chattel Mortgage act, is void as against the assignee.

5. Where a bill to foreclose a chattel mortgage joined the mortgagor's assignee for benefit of creditors, who moved to dismiss as to him because the bill showed the mortgage to be void as to him, the fact that the mortgage was valid as to the mortgagor was no ground for denial of the assignee's motion, the validity of the mortgage as to him being the only question before the court.

6. A chattel mortgagee filed a foreclosure bill making the mortgagor's assignee for the benefit of creditors a party. It appeared from the bill that the mortgage was void as to the assignee, but there was no allegation as to whether or not the mortgaged property was needed for the payment of the other creditors.—*Held,* that in the absence of any allegation that the other property was sufficient to satisfy the claims of other creditors, the assignee's motion to dismiss as to him would not be denied, because it did not affirmatively appear from the bill that the mortgaged property was needed to satisfy the other claims.

On motion to dismiss bill.

*Mr. William H. Speer, Jr., pro se,* for the motion.

*Mr. Edward A. Day, contra.*

STEVENSON, V. C.

The bill is filed to foreclose a chattel mortgage and if necessary to reform the same. The defendant, who, on this motion objects to the sufficiency of the bill as against him, is the general assignee of the mortgagors for the benefit of their creditors. His insistment is that the mortgage is shown by the bill to be void as against him because of the insufficiency of the affidavit accompanying the same.

The claim of the complainants that, in case the affidavit should be adjudged to be defective by reason of its failure to comply with the requirements of the statute, the mortgage could now be reformed by the addition of a new affidavit, does not seem to call for extended discussion. The chattel mortgage, once absolutely void as against creditors or purchasers cannot be made valid without to a large extent abolishing the Chattel Mortgage act. The point seems to be directly ruled upon by Mr. Justice Magie, the present chancellor, speaking for the entire court of errors and appeals in *Magowan* v. *Baird, 8 Dick. Ch. Rep. 656, 657.*

The questions to be determined are whether the affidavit attached to the mortgage fails to comply with the requirements of our statute, and if so, whether this defendant, the general assignee, belongs to a class of persons as against whom the mortgage is "absolutely void," and if both these questions are answered in favor of this defendant, whether the bill can be retained for any purpose as against him.

The argument on both sides has proceeded upon the assumption that the mortgage was not "accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged," and that therefore the Chattel Mortgage act applies to this case.

The bill does not allege that there was a change of possession when the mortgage was delivered, nor does it in terms allege that there was no such change of possession. There are, however, numerous allegations in the bill which indicate strongly that no change of possession occurred.

The bill claims that the mortgage fulfilled the requirements of the statute, and in case that contention is not sustained, seeks

Watson *v.* Rowley.

to obtain the aid of the court in any necessary reformation of the instrument so as to make it conform with those requirements. The mortgage purports to convey a plant of machinery situate in the factory of the mortgagors, Rowley & McCreery, at Hightstown, New Jersey, alleged to have been in the possession of the mortgagors when the mortgage was executed on January 24th, 1902. There are also allegations which indicate that the mortgagors continued their business in their factory after the mortgage was made, and the mortgage contains the usual authorization to the mortgagees in case the sum secured should come due and remain unpaid, to enter any place where the mortgaged property might be and to seize and sell the same.

The bill further alleges that on February 7th, 1902, fourteen days after the mortgage was executed, and only three days after it was recorded, the mortgagors executed and delivered to the defendant, William H. Speer, Jr.,

"a deed of assignment of all their property and assets, including the said mortgaged chattels, for the benefit of their creditors, and that the said Speer has taken possession of the goods and chattels covered in said mortgage and all the business and other property and assets".

of the mortgagors and now is in possession thereof. In view of these allegations and the assumption of counsel for the complainants, in his argument, that the Chattel Mortgage act was applicable to this case, I think that for the purpose of this motion the bill should be construed as setting forth a mortgage of chattels which remained in the possession of the mortgagors, or, at least, at no time after the mortgage was made were continuously in the possession of the mortgagees.

The affidavit attached to the mortgage, the jurat of which bears date January 24th, 1902, is as follows:

"Edward H. Rowley and Benjamin F. McCreery, the mortgagees in the foregoing mortgage named, being duly sworn on their oath say that the true consideration of said mortgage is as follows, viz.: One thousand five hundred dollars in cash this day paid to these deponents by the firm of Watson Porter Giles & Company, and deponents further say that there is due on said mortgage the sum of one thousand five hundred dollars in cash, besides lawful interest thereon from the date day of this mortgage and affidavit."

The word· "mortgagees" in this affidavit is a palpable clerical error and must be read "mortgagors."

(1) The first objection to the affidavit is that it does not show on its face that it was "made and subscribed by the holder or holders of said mortgage, or their agent or attorney." It appears affirmatively that the affidavit was not made by the holders of the mortgage, and it does not in any way appear that Messrs. Rowley & McCreery were the agents of the holders of the mortgage. The defendant insists that where the affidavit is made by an agent of the holder, the fact that he is such agent must appear upon the face of the affidavit.

The objection, in my opinion, is fatal to the sufficiency of the affidavit. If the affidavit is made by the holder of the chattel mortgage, that fact should appear. A person may become the holder of a chattel mortgage by an assignment made subsequently to the execution and delivery of the mortgage. The mortgage may not be accompanied by any affidavit and yet it would seem that the holder may annex his own affidavit and record the mortgage with the effect that the mortgage will become in a large degree operative from the date of such record. *Roe* v. *Meding, 8 Dick. Ch. Rep. 350.*

There are many reasons which seem, to my mind, to sustain the proposition that an affidavit made in fact either by the holder of a chattel mortgage or by the agent of such holder is not a compliance with the statute where the affiant does not appear in the affidavit or mortgage to be either such holder or such agent.

The main objects of the affidavit are to secure good faith, to prevent fictitious liens from being placed on record, and to enable creditors and other parties interested in investigating the status of personal property to make inquiry into the nature of any alleged mortgage where no change of possession has occurred. The person who is qualified to make this affidavit of good faith is ·prescribed strictly by the statute. He may know little or nothing as to the truth of the statements which he is required to make under oath. He must satisfy himself of the truth of these statements, and upon their truthfulness may depend the validity of the mortgage.

The facts alleged in the affidavit might not be provable in any litigation by the oath of the person who makes the affidavit. The witnesses who alone in such litigation could establish these facts by their testimony might all of them be disqualified from making the affidavit necessary to validate the mortgage because none of them was the holder or the agent of the holder of the mortgage. It is thus not only necessary that a proper affidavit should be made in regard to certain facts, but it is equally necessary that such affidavit should be made by an affiant who is particularly described by his special relations to the mortgagor and the mortgaged property. The mortgage might be void though accompanied by a dozen affidavits made by credible witnesses who had knowledge of all the facts. The mortgage would be valid though accompanied only by the affidavit of the holder thereof or his agent, notwithstanding that such holder or agent had no knowledge whatever of the most important matters alleged in such affidavit. These propositions are, I think, fully sustained by the decision of the court of errors and appeals in *Fletcher* v. *Bonnet; 6 Dick. Ch. Rep. 616.*

In the same case in this court (*6 Dick. Ch. Rep. 162, 165*) Vice-Chancellor Pitney held that inasmuch as neither the mortgage nor the affidavit *showed* that the affiant was "the agent or attorney of the several beneficiaries under the instrument in question other than himself * * * it was very properly conceded by counsel for the defendant that the affidavit could not be maintained on that ground."

This ruling was not affected by the reversal of the decision in the higher court.

Where an affidavit, made in pursuance of a statute, derives its force, not from the fact that the affiant, as a witness, testifies to facts within his knowledge, but from some special capacity or personal status of the affiant, who may speak from information or belief only, it would seem that the existence of such capacity or personal status should appear in the affidavit, in order to give it validity, and cannot afterwards be supplied by evidence *aliunde.* If additional proof of this essential fact may be supplied, why not also additional proof of any of the other essential facts which the affiant must set forth? While the Chattel Mort-

gage act does not, in terms, prescribe that this capacity of the affiant to make the affidavit must appear therein, it seems to be the intention that the record must show facts which, if true, make the otherwise void instrument valid.

It is a common practice, followed, or attempted to be followed, in this case, to have the affidavit show the capacity of the affiant in an introductory recitation of the officer before whom the affidavit is made. Whether or not such a practice is to be regarded as satisfying the requirements of the statute may be passed without discussion.

(2) But if the defective affidavit can be "holpen by averment," I cannot find in this bill any sufficient allegation to the effect that the affiants were the agents of the mortgagees or the agents of the holders of the mortgage within the meaning of the Chattel Mortgage act. The complainants, in their bill, "show and charge and insist that in making the said affidavit" the affiants were the complainants' agents, and that they (the complainants) have ratified, and by their bill do ratify, the acts of the affiants "in making the affidavit" as their agents. A perusal of the whole bill leaves a doubt whether this allegation of agency should not be taken as the statement of a mere conclusion of law. But giving the statement its full force as a proposition of fact to be taken as true on this motion, it merely sets forth that the affiants acted as agents of the mortgagees *"in making the affidavit."* The essential proposition of fact which the statute requires to be established in some manner is that the affiants who make the validating affidavit to the chattel mortgage were the agents of the holders of the mortgage; the conclusion of law then follows that, being such agents, they were authorized not by the holders of the mortgage, but by the statute, to make the affidavit. The whole theory established by the court of errors, in *Fletcher* v. *Bonnet,* that the force of the affidavit comes from the status or capacity of the affiant, would be abrogated if the holder of the mortgage could depute the statutory duty of making the affidavit to any person whom he might see fit to make his agent or attorney for that purpose. The whole policy of the statute could readily be evaded if the man whose conscience

is to be tested could employ any agent or attorney to do the swearing for him.

It seems to me that the Chattel Mortgage act indicates very plainly that, when the holder of the mortgage is not sworn to free it from its taint of invalidity or original common law fraud, only an agent or attorney who represented the holder in acquiring the mortgage, in becoming the holder of the mortgage, or at least represents him in maintaining the possession of the mortgage and his status as the holder thereof, and as such agent or attorney would probably know the actual purpose of the instrument, has the required capacity to take the affidavit in the holder's place.

In brief, the agent or attorney of the holder of the mortgage referred to in the statute must be one whose agency and power to represent the holder *relate to the holding* of the mortgage.

It may be observed, in passing, that the affidavit under consideration, and also the bill, disregard the fact that the statute does not authorize the mortgagee to make the affidavit, but the *holder* of the mortgage. In this case counsel on both sides have proceeded upon the assumption that, under the facts stated, the mortgagee was presumably the holder when the affidavit was made, and this assumption may be taken as fully justified.

(3) It is also objected that the affiants were, in fact, the mortgagors, and that the policy of the statute will not permit the mortgagor to act as the agent or attorney of the holder of the mortgage.

In considering this objection the exact facts of this case must be borne in mind. No transfer of the mortgage or of the mortgaged property appears to have been made after the execution and delivery of the mortgage and the making of the affidavit. The mortgage and the affidavit bear the same date. It would seem, therefore, that we must consider this case as presenting an effort on the part of a person, when making and delivering a deed, to act, not only for himself, but also as agent for the party who receives the deed. But without further discussing this difficulty, I think the point is well taken that the mortgagor of chattels, under our statute, is disqualified from acting as agent for the holder of the mortgage in making the validating affidavit

prescribed by the statute, so long at least as his relation to the mortgage and the mortgaged property remains unchanged.

The situation is this: The mortgagor has already executed and delivered an instrument which, under the rules of the common law, was fraudulent as against subsequent creditors and purchasers. *Twynes' Case, 3 Rep. 80; 1 Sm. Lead. Cas. 1; Edwards* v. *Harben, 2 T. R. 587; Chumar* v. *Wood, 1 Halst. 189; Runyon* v. *Groshon, 1 Beas. 86; Miller* v. *Pancoast, 5 Dutch. 250.*

While the Chattel Mortgage act declares an unrecorded mortgage upon chattels left in the possession of the mortgagor to be void, it would seem that the history of the whole law of the subject justifies the statement that what the Chattel Mortgage act in fact did when it was first enacted was to reinstate the original common law doctrine that such an instrument was fraudulent as against creditors and purchasers, and at the same time to provide a means by which the injurious effect of that doctrine, which had brought about its modification, could be obviated.

This view, perhaps, was not recognized or may have been rejected by Chancellor Runyon in *Shaw* v. *Glen, 10 Stew. Eq. 32.*

But whether the taint in a chattel mortgage, to which our statute applies and which fails to meet the requirements of that statute, is to be regarded as a taint of fraud or a taint of statutory invalidity, the result is the same. The mortgagor has made a conveyance of his property which is fraudulent, or at any rate void as against his creditors. No act on his part can remove the stamp of illegality from this transaction or purge the instrument which he has executed of its taint. Only the holder of the mortgage who is usually the other party to the transaction which resulted in the giving of the mortgage or the agent or attorney of that holder, can cure the instrument of its defect. It would be a most extraordinary result, indeed, if this statute could be so construed as to enable the mortgagor, whose fraud the statute intends to prevent, to execute, acknowledge and deliver an illegal instrument, and then at once remove the taint of illegality by his own affidavit.

Whatever may be the requirements of chattel mortgage acts of other states in reference to this validating affidavit, it is plain

that our statute passes by the mortgagor, the maker of the suspected conveyance, and calls upon the other party to the transaction, the holder of the mortgage, or his agent to swear to its true consideration. In my opinion one great purpose of the statute would be evaded if the holder of the mortgage could constitute the maker of the mortgage, his agent or attorney, for any purpose so as to qualify him to make this necessary affidavit. Whether the disability of the mortgagor to act as agent for the holder of the mortgage remains after the mortgagor has transferred his interest, or ceased for any reason to become interested in the mortgage or the property covered by it, we need not now inquire. In this case the affidavit was made by the mortgagors on the same day on which they made the mortgage. The making of the mortgage and the taking of the affidavit might almost be regarded as parts of a single transaction and no transfer of the interest of the mortgagors in the mortgaged chattels appears to have been made until the general assignment was executed to the defendant Speer.

(4) The next question is whether the defendant Speer, the general assignee of the mortgagors for the benefit of their creditors, belongs to a class of persons as against whom the statute denounces this mortgage as "absolutely void."

If this question arose under the Assignment act of 1874 (*Gen. Stat. p. 77*) it would be answered in this court in the negative in accordance with the views expressed by Vice-Chancellor Emery in the case of *Wimpfheimer* v. *Perrine, 16 Dick. Ch. Rep. 126*, the last reported case under the provisions of the above-cited statute. But the assignment in this case was made February 7th, 1902, and therefore is controlled by the act concerning general assignments (*P. L. of 1899 c. 54*), which as yet has not been dealt with in any reported case. The old Assignment act which was first passed in 1820 and remained unchanged in theory till 1899, was based upon the idea of a judicial regulation of a trust created by the assignor and impressed upon his (the assignor's) property. Generally speaking, the assignee took what the assignor had to give, no less, no more, and realized from the estate committed to his charge, on behalf of his beneficiaries, the assignor's creditors, only what the assignor might have real-

ized on his own behalf if no assignment had been made. To what extent exceptions were allowed to this general principle, based upon the doctrine of *Pillsbury* v. *Kingon, 6 Stew. Eq. 287,* need not now be discussed.

The revision of 1899 proceeds upon an entirely different theory. The assignor initiates the proceeding by which his property is devoted to the payment of his debts through the instrumentality of a trustee called an assignee, precisely as the voluntary bankrupt initiates the proceedings by filing his petition. But when the assignment has once been made, the theory of the new statute is that the claims of creditors are enforced as beneficially as if they were all united in a judgment against the assignor levied upon his estate at the date of the assignment, as if the trust were founded on an involuntary transfer of property from the assignor. The distinction between the power of the assignee to set aside conveyances and the power of a receiver of an insolvent corporation to do this thing, illustrated in the cases of *Shaw* v. *Glen, supra,* and *Receiver of Button Co.* v. *Spielmann, 5 Dick. Ch. Rep. 120, 796,* is abolished. The act in the fifteenth section provides as follows:

"The said assignee in addition to the powers which he may exercise as the successor to such assignor shall also at all times be the representative of the creditors of such assignor, and shall have the same power to set aside conveyances and to recover or reach assets for the benefit of the creditors of such assignor as a creditor of said assignor would have who had recovered a judgment against said assignor at the date of said assignment, and all conveyances, mortgages and transfers of property, real or personal, made by the said assignor, which are void or voidable as against the creditors of such assignor, shall in like manner be void or voidable as the case may be as against the said assignee."

The theory of this statute is further illustrated by other provisions, such as those of the sixteenth section, which make all preferences made by the assignor within two months before the assignment void as against the assignee and the amount thereof recoverable by him. In the seventeenth section it is provided that the holders of two-thirds in amount of the indebtedness entitled to a dividend may have the assignee named in the deed of assignment removed and their appointee substituted in his place.

Under this General Assignment act of 1899 it is manifest that the chattel mortgage exhibited by the bill of complaint in this case is void as to the defendant Speer, the general assignee of the mortgagor.

(5) The last question to be determined is whether the bill of complaint can be retained for any other purpose than that of enforcing this chattel mortgage as a lien prior to the title and interest of the general assignee as the representative of the assignor's creditors.

It is urged on behalf of the complainants that the chattel mortgage is good as against the mortgagors, and therefore the bill should not be dismissed. The motion is merely to dismiss the bill as to the defendant Speer, the general assignee. This is the only matter now before the court.

It is also insisted that the bill does not show that there are any creditors of the mortgagors. The bill, as recited above, expressly alleges that the mortgagors made this assignment of all their property "for the benefit of their creditors." If the mortgagors did that thing, as alleged, there must have been creditors in existence.

The most serious claim, that the bill should be retained as against the defendant Speer, is based upon the insistment that it does not appear that the mortgaged chattels in suit are required for the payment of claims of the creditors who are the beneficiaries of the assignee. It is urged that if the assignee has other assets which are sufficient to pay the debts of the estate, he should not be allowed to contest the mortgage which is valid as between the mortgagor and the mortgagee.

This argument, I think, is fully answered by the proposition that if any of these things are true which are suggested as possible on behalf of the complainant, they should have been alleged in the bill of complaint. The bill is not filed to have any marshaling of assets—to have the assignee, who has a *quasi* mortgage title upon other property besides that included in this chattel mortgage, compelled to resort to that other property first. Nor is the bill filed to procure a substitution of the holders of the mortgage for the mortgagors, as beneficiaries under the general assignment, so as to intercept any residue of proceeds of sale of

Watson *v.* Rowley.

the mortgaged chattels after the satisfaction of the claims of all creditors which would otherwise go back to the assignors. The whole object of the bill is to enforce this chattel mortgage against the rights of the defendant Speer as the representative of creditors under the general assignment. The complainants are, or may become at any time, beneficiaries under the general assignment and the defendant Speer is their trustee. This court may be open to the complainants for the recognition and enforcement of any such equities as, on the argument, it has been hinted they possibly may have.

I shall advise that the bill of complaint be dismissed as to the defendant Speer.