66 N.J. Super. 423 (1961)
169 A.2d 236
IN THE MATTER OF THE GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS OF NATIONAL MEAT SUPPLY CO., INC.
Superior Court of New Jersey, Hudson County Court, Probate Division.
Decided March 22, 1961.
*424 Messrs. Krieger and Chodash, attorneys for Distributors Union Local 627, AFL, and National Meat Supply Co. (Mr. Harold Krieger, appearing).
Mr. Irving Reiken, attorney for Harold S. Okin, assignee.
ROSEN, J.C.C.
The sole issue involved here is whether contributions by an employer to a pension trust fund, which are required by a collective bargaining agreement, are entitled to priority as "wages" under N.J.S. 2A:19-30.
National Meat Supply Co., Inc. (National) made an assignment for the benefit of its creditors pursuant to the provisions of N.J.S. 2A:19-1 et seq. The assignee has filed his final account. He has made application for an order of payment of priority claims filed with him as such assignee. The United States of America has filed a claim in the sum of $311.27 which has first priority. There is no dispute that the wage claims of Anthony Bello and William J. Baumann, in the sums of $156.96 and $300, respectively, are preferred claims within the meaning of N.J.S. 2A:19-30. This court is called upon to determine whether the claim of the Provision Salesmen & Distributor's Union, Welfare & Pension Fund, in the amount of $292.38, is entitled to priority as "wages due" from the assignor.
*425 N.J.S. 2A:19-30 provides:
"The wages of clerks, mechanics and laborers due from the assignor at the time of the general assignment including wages fully earned though not then payable, shall be preferred and shall be paid by the assignee before any other claim or debt. * * *" (Emphasis supplied)
Article XII of the agreement between the Provision Salesmen and Distributors Union Local 627 and National provides that:
"The Employer agrees that on the first day of each month to pay Three ($3.00) Dollars per man, per week, payable to the Provision Salesmen & Distributors Union, Pension Trust Fund.
It is hereby expressly agreed that for the purpose of the United States Bankruptcy Act or any State insolvency or debtor and creditor laws, the contributions payable by the Employer to the Provision Salesmen & Distributors Union Welfare Trust Fund and Pension Trust Fund as aforesaid shall be considered as wages and have priority as such provided in said act or such laws with respect to wages, and that the Trustees of the Trust Funds shall be deemed separate claimants with respect to each employee for whom contributions due shall have not been paid."
Counsel has not cited, nor has this court discovered, any authorities in New Jersey deciding this question. The union contends that welfare and pension funds are "wages" in that the same are negotiated between labor and management on behalf of workmen, and there is recognition that such costs are direct labor costs and applied as such. The theory and argument is that payments made to the fund are moneys the employee earns by reason of his work, and they are paid for such labor performed.
It would be instructive to review the provisions of the Bankruptcy Act, section 64, subsection (a) (2), 11 U.S.C.A. § 104(a)(2). The cited provision of the Bankruptcy Act provides that one of the debts to have priority is "wages and commissions, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen." (Emphasis supplied)
*426 The question whether contributions by an employer to a union welfare or other trust fund, which are required by collective bargaining agreements, are "wages" entitled to priority payment in a bankruptcy proceeding, has caused considerable difficulty in the federal courts. Generally supporting the principle advanced by the union is In re Otto, 146 F. Supp. 786 (D.C.S.D. Cal. 1956); Martin v. William Casey & Sons, Inc., 5 A.D.2d 185, 170 N.Y.S.2d 228 (App. Div. 1958); [*]Matter of Embassy Restaurant, Inc., 254 F.2d 475 (3 Cir. 1958); contra; In re Brassel, 135 F. Supp. 827 (D.C.N.D.N.Y. 1955); In re Victory Apparel Mfg. Corp., 154 F. Supp. 819 (D.C.D.N.J. 1957); Local 140 Security Fund v. Hack, 242 F.2d 375 (2 Cir. 1957).
In Victory Apparel Mfg. Corp., supra, the union filed a claim alleging wage priority predicated upon a bargaining agreement signed by the employer bankrupt and the union. Pursuant to this agreement the employer was required to make payments computed at 4 1/2% of the gross reportable payroll of the employees in the bargaining union. These payments were made directly to the insurance and welfare funds. The court held that the legislative intent underlying the priority to the specified wage claims is to furnish distressed workers with a cushion of purchasing power against the impact of their employer's bankruptcy. The court denied the priority on the basis that the Bankruptcy Act does not encompass an employer's unpaid contribution to a union insurance or retirement fund.
In an action by a trustee of union welfare funds against sureties on defaulting contractors bond to recover unpaid contributions due from contractor to union welfare funds, in accordance with a collective bargaining agreement, the Appellate Division of the New York Supreme Court held that the bond undertaking to pay all lawful claims for *427 wages and compensation for labor performed included welfare contributions within its protective coverage, and the trustees of the welfare fund were proper parties to bring the action to recover the contributions. Martin v. William Casey & Sons, Inc., supra. The court observed that the term "wages" may be interpreted differently, and that the sense in which it is used in a given statute depends not only on the wording of the statute but on the purpose of the law as well. For example, for internal revenue purposes, "wages" do not include welfare contributions made by the employer; nor do "wages" include employer welfare contributions for certain purposes of the criminal law. For the purpose of determining priority in the payment of debts under assignments made in accordance with the New York Debtor and Creditor Law, McKinney's Consol. Laws, c. 12, wages do include welfare contributions made by the employer. In re Larry Jay, Inc., 3 A.D.2d 386, 160 N.Y.S.2d 790 (App. Div. 1957). In the latter case, there was a general assignment for the benefit of creditors and the court held that unpaid employers contributions to the union for the union health, welfare and retirement funds were entitled to a preference. Section 22 of the New York Debtor and Creditor Law provides, inter alia, as follows:
"In all distribution of assets under all assignments made in pursuance of this article, the wages or salaries actually owing to the employees of the assignor or assignors at the time of the execution of the assignment for services rendered within three months prior to the execution of the assignments, * * * shall be preferred before any other debt; * * *
For the purposes of this section, wages or salaries shall mean all compensation and benefits payable by an employer to or for the account of the employee for personal services rendered by such employee. These shall specifically include but not be limited to salaries, overtime, vacation, holiday and severance pay; employer contributions to or payments of insurance or welfare benefits; employer contributions to pension or annuity funds; and any other moneys properly due or payable for services rendered by such employee. * * *" (Emphasis supplied)
*428 An examination of N.J.S. 2A:19-30 does not disclose a comparable provision permitting the employer's contributions to pension or annuity funds to be considered "wages." In United States v. Embassy Restaurant, Inc., 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959), a collective bargaining agreement between Embassy and the union provided that Embassy was obligated to contribute to the trustees of the welfare fund, a flat sum per month per full-time employee. The court was called upon to determine whether the contributions by the employer to this fund under the collective bargaining agreement were "wages" due to workmen entitled to priority within the contemplation of section 64, sub. (a) (2) of the Bankruptcy Act. The court held that such contributions were not entitled to priority under the cited section of the act. "`The broad purpose of the Bankruptcy Act is to bring about an equitable distribution of the bankrupt's estate' * * *, and that `if one claimant is to be preferred over others, the purpose should be clear from the statute.'" The employer's contribution was "due" to the trustees and not the workmen. The workmen could not even compel payment by a defaulting employer; it was enforceable only by the trustees who possess the sole title, and the exclusive management of the funds. The court distinguished between claims "justly due" and "wages * * * due to workmen" and held that the contributions of the employer may be "justly due" but they are not "wages due to [the] workmen," within the contemplation of section 64, sub. (a) (2).
N.J.S. 2A:19-1 et seq. while permitting assignments for the benefit of creditors, is in essence a transfer or conveyance by a debtor in writing, whereby the debtor transfers or conveys to an assignee "in trust for the benefit of his creditors" all of his property. The assignor initiates the proceedings by which this property is devoted to the payment of his debts through the instrumentality of a trustee, called an "assignee," precisely as the voluntary bankrupt initiates the proceeding by filing his petition. Watson *429 v. Rowley, 63 N.J. Eq. 195, 204 (Ch. 1902). The Legislature has determined that the wages of workmen due or wages fully earned, though not then payable, shall be preferred and shall be paid by the assignee before any other claim or debt. In the present case the agreement between the employer and the union specifically provides that the employer pay the trustees of the pension trust fund $3 per man per week regardless of the wages earned by the employee. Article XII of the agreement states that for the purpose of any debtor and creditor laws the contributions by the employer to the trust fund shall be considered as "wages" and have priority. It is evident that the parties to an agreement are not governed by business practices but by the law under which they claim priority. The statute was passed to insure priority payment to workmen who had "wages" due from the assignor at the time of the general assignment, including wages fully earned, though not then payable. The court, in Victory Apparel Mfg. Corporation, supra, said:
"The point to be noted here, however, is that the term `wages' will take its content and meaning from the particular legislative enactment. The problem, in short, calls for the application of the maxim `noscitur a sociis,' which is to say that words like people, may be known by the company they keep. The general and specific words are associated with and take color from each other." (at p. 822 of 154 F. Supp.)
It is not for this court to enlarge the provisions of the statute, N.J.S. 2A:19-30. The statute clearly refers to "earned wages" only, which is to say, wages based upon services rendered by the employee. The facts in this case are closely analogous to the factual situation in Embassy, supra. The court is constrained to follow the reasoning and conclusion in Embassy. The claim of the Union, Welfare & Pension Fund is not a preferred claim for wages within the contemplation of N.J.S. 2A:19-30.
NOTES
[*] Reversed, United States v. Embassy Restaurant, Inc., 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959).