134 N.J. Super. 39 (1975)
338 A.2d 211
SAUL J. ZUCKER, SUBSTITUTED ASSIGNEE FOR THE BENEFIT OF CREDITORS OF JEROME R. ROSS, INDIVIDUALLY AND T/A J.R. ROSS & CO., PLAINTIFF-APPELLANT,
v.
HARRY SILVERSTEIN, TRUSTEE, AND ANNE K. SILVERSTEIN, DEFENDANTS-RESPONDENTS, AND EDWARD FRIEDMAN AND MAURICE POLKOWITZ, INTERVENORS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 15, 1975.
Decided April 30, 1975.
*42 Before Judges HALPERN, CRAHAY and WOOD.
Mr. Saul J. Zucker argued the cause for appellant (Messrs. Zucker, Lowenstein, Gurny, Facher and Zucker, attorneys).
Mr. Sam Weiss argued the cause for all respondents.
Mr. Lawrence Levitt argued the cause for respondents Harry Silverstein, trustee, and Anne K. Silverstein (Messrs. Silverstein, Bloom & Levitt, attorneys).
Mr. Kenneth L. Abrams argued the cause for intervenors respondents Edward Friedman and Maurice Polkowitz (Messrs. Friedman, Kates & Uscher, attorneys).
The opinion of the court was delivered by HALPERN, P.J.A.D.
Before considering the grounds advanced for reversal of the judgment dismissing appellant's complaint at the end of his proofs, it will be helpful to summarize the factual background as demonstrated by the record.
By three deeds dated September 8, 1966 Jerome R. Ross acquired title, in his individual name, to valuable real property located in Essex County from Pleasant Fair, Inc., Liberty Holding Co., Inc. and L.D.L. Corporation. These *43 deeds were promptly recorded in the Essex County Register's Office.
By deeds dated April 15, 1967 and March 29, 1968 Jerome R. Ross and Lee Ross, his wife, acquired title as tenants by the entirety to real property located in Essex County from Mortimer C. Tompkins and Helen L. Tompkins, his wife. These two deeds were also promptly recorded in the Essex County Register's Office.
By deed dated July 20, 1972 and recorded July 21, 1972 in the Essex County Register's Office the Rosses conveyed to "Harry Silverstein, Trustee" all their right, title and interest in the real property acquired by the five deeds heretofore mentioned, excepting therefrom so much thereof as had been previously conveyed by them to others. The deed did not set forth for whom and under what conditions Silverstein was to act as trustee. However, attached to the deed was an affidavit by Jerome R. Ross which stated:
 STATE OF NEW JERSEY)
 ) ss. :
 COUNTY OF ESSEX )
JEROME R. ROSS, being duly sworn according to law, upon his oath deposes and says:
1. I am one of the Grantors in the annexed deed.
2. I have held the aforementioned property as Trustee pursuant to a declaration of trust between myself and several other individuals.
3. The sole purpose of this transfer is to substitute Harry Silverstein as Trustee in my place and stead, and all other items in connection therewith remain the same.
4. There is no consideration being paid or obligations being assumed by the Grantee or any other change in the trust other than the person of the trustee.
 Subscribed and sworn /s/ Jerome R. Ross
 to before me this 20th JEROME R. ROSS
 day of July, 1972
 /s/ Ruth C. Atkin
 RUTH C. ATKIN
 Notary Public of New Jersey
 My Commission Expires Apr. 27, 1975
Significantly, the affidavit avers that he held the property as trustee when in fact two of the parcels were held by the entirety.
*44 By a carefully drawn instrument designated "Partnership Agreement," purportedly made in the year 1967 but otherwise undated and unacknowledged, but signed by Philip Fixel, Edward Friedman, Jerome R. Ross, Maurice Polkowitz and Jerome R. Ross, trustee, the parties designated Jerome R. Ross as trustee of certain of the lands and premises hereinbefore mentioned for the general purpose of forming a partnership to develop and sell real estate. Their respective interests in the partnership were fixed at 30% for Fixel, 10% for Friedman, 10% for Polkowitz and 50% for Ross. This instrument was never recorded in the Essex County Register's Office, but found its way into the pleadings filed in this cause when attached as an exhibit to Polkowitz's affidavit on a motion to intervene, as will hereinafter appear.
On August 30, 1972 Jerome R. Ross, individually and trading as J.R. Ross & Co., made a written assignment for the benefit of his creditors to James T. Kirk pursuant to the provisions of N.J.S.A. 2A:19-1 et seq. It was filed on September 7, 1972 in the Union County Register's Office. When Kirk became seriously ill in December 1972 the assignment judge of Union County appointed appellant Saul J. Zucker as substituted assignee. The assignment, sworn to by Ross, indicated that he had assets of $575,640 and liabilities of over $1,000,000.
Following an investigation by appellant, wherein the facts of record above mentioned became known to him, he instituted the present suit in the Superior Court, Chancery Division, Essex County, to compel Silverstein and his wife to convey to him the lands and premises he had acquired from the Rosses as trustee, by the deed of July 20, 1972. His complaint alleged that the conveyance was made in fraud of creditors and while insolvent or contemplating insolvency, contrary to N.J.S.A. 2A:19-3.[1]
*45 The Silversteins answered the complaint and asserted that Harry Silverstein held title as substituted trustee for Ross, presumably under the aforedescribed unrecorded partnership agreement. They further alleged that appellant's interest in the partnership realty was limited to Ross' interest therein, and that appellant had no interest in the realty per se. Cross-motions for summary judgment were filed returnable June 15, 1973 but carried to June 29, 1973. Between June 15, 1973 and June 29, 1973 Polkowitz and Friedman filed separate applications for leave to intervene. Both applicants essentially took the same legal position as advanced by Silverstein in asserting the alleged unrecorded partnership agreement and setting forth the moneys they had advanced in connection therewith. We note at this point that the alleged partners-intervenors had also filed their individual claims with appellant as general creditors of Ross.
On June 29, 1973 Judge Kimmelman heard full argument on cross-motions for summary judgment and the applications to intervene. On July 25, 1973, after considering all the proofs presented, the judge filed and mailed copies of his letter opinion to all counsel, including counsel for the intervenors, wherein he granted summary judgment in favor of appellant. He found that the conveyance to Silverstein, as trustee, by the Rosses was a preference in violation of N.J.S.A. 2A:19-3. He directed counsel to present an appropriate order and ordered Silverstein to execute and deliver a deed to appellant for the benefit of all creditors.
*46 Before the judgment could be signed Silverstein and the intervenors moved for reargument. The motion was argued on September 14, 1973 and decision was reserved. On September 21, 1973 Judge Kimmelman disqualified himself on the limited issue of the title acquired by Ross individually, reserved all other issues to himself, and referred the title issue to Judge Antell. At the same time he permitted the intervenors to participate in the reargument.
Thereafter, Friedman filed an answer and counterclaim to appellant's complaint, and Polkowitz filed an answer thereto. In effect, once again Friedman and Polkowitz took the same legal position in their pleadings as advanced by Silverstein.
Thereafter, the parties made cross-motions for summary judgment on the limited issue referred to Judge Antell. These motions were denied on November 7, 1973. On November 20, 1973 Judge Kimmelman signed an order referring the entire case for disposition to Judge Antell. We assume that by so doing he intended the entire matter to be heard by Judge Antell as though he had never considered it. Judge Antell set forth the issues in the pretrial order as being:
7. Application of recording statutes (R.S. 46:16-1) and 22-1; Effect of R.S. 2A:19-1, et seq. and 2A:20-6) on the transfer of the real estate without consideration and within 40 days of filing the assignment for the benefit of creditors; existence of partnership between Ross and the Intervenors and the legal relationship arising therefrom; transfer of real estate to the defendant as a preference under R.S. 2A:19-3: priority as between trust beneficiary and general creditors where trust declaration was unrecorded: whether the Recording Acts apply to the Intervenor's interest in the 1967 partnership agreement; application of N.J.S.A. 42:1-26; waiver and estoppel by the intervenors arising from needless delay to the detriment of the general creditors.
At the trial Ross, who was called as appellant's first witness, testified he had filed the assignment for the benefit of creditors (assignment). Thereafter, on the advice of his personal counsel who was present, he refused to answer on *47 Fifth Amendment grounds all questions pertaining to the issues involved, e.g.: he refused to testify that he recognized or executed the July 20, 1972 deed to Silverstein, as trustee; he refused to testify whether he was insolvent or contemplating insolvency on July 20, 1972; he refused to admit he executed the assignment; he refused to testify whether the schedules of assets and liabilities annexed to the assignment represented his financial condition as of the date of his filing, and he refused to testify to his acquisition of the real property by the three deeds in 1966 from Pleasant Fair, Inc., Liberty Holding Co., Inc. and L.D.L. Corporation. At this point counsel for Ross indicated to the trial judge and all counsel that the Fifth Amendment privilege would be claimed as to all questions pertaining to the issues before the court. With that, appellant asked no further questions. It should be noted here that neither counsel nor the trial judge challenged Ross' basis for refusing to answer.
Alvin Eglow, the certified public accountant for Ross, testified that he prepared a financial statement for Ross, trading as J.R. Ross & Company, for 1971. He testified, in brief, based on Ross' records and representations, that the liabilities exceeded the assets by about $500,000 on December 31, 1971. In response to the trial judge's questioning he expressed the opinion that between December 31, 1971 and July 20, 1972, when Ross conveyed to Silverstein, his financial condition did not improve although he had no exact knowledge of what had transpired during that interval.
Appellant then offered into evidence some exhibits, most of which the trial judge excluded. He permitted appellant to read into the record the names of the creditors who had filed claims with him, totalling $1,905,812.09. Among the creditors listed were Marion Fixel for $425,000 and defendant Silverstein for $1,152,833.55 (this claim apparently also included claims of some of the alleged partners).
*48 The trial judge, without requiring any proofs from the Silversteins or the intervenors, dismissed appellant's complaint. In dismissing the complaint the trial judge, relying on Sokol v. Fidelity Union Trust Co., 138 N.J. Eq. 429 (E. & A. 1946), held that appellant had not proved Ross' insolvency or that he was contemplating insolvency, and that the conveyance to Silverstein, as trustee, was not a preferred transfer to a creditor in violation of N.J.S.A. 2A:19-3. He viewed Ross' connection with the alleged partnership as a trust relationship and not a debtor-creditor relationship. The appeal is from the judgment entered on that determination. We reverse.
At the outset we point out that we do not understand why the trial judge, in making his brief findings, appeared to place significance upon the fact that some of the testimony relating to insolvency concerned J.R. Ross & Co. as distinguished from Jerome R. Ross, individually. The assignment was made by Jerome R. Ross, individually and trading as J.R. Ross & Co. As far as the record indicates, Ross was J.R. Ross & Co., a mere trade name he used for his own purposes, even though his wife's name appeared on the trade name certificate. It is axiomatic that an individual using a trade name does so for his personal convenience and motive, but that he personally remains liable for all debts incurred. In other words, one using a trade name does not create a separate entity. We must assume, since there is nothing shown to the contrary, that Ross utilized N.J.S.A. 56:1-1 et seq. in doing business under the trade name of J.R. Ross & Co. when it suited his purposes.

I

JUDGE KIMMELMAN'S DISQUALIFICATION
While there may be some question as to whether Judge Kimmelman's disqualification should be considered as plain error, we prefer to pass upon the merits.
*49 When this matter was first heard by Judge Kimmelman he advised all counsel before commencing the hearing that he had represented the grantors in the three deeds to Jerome R. Ross, individually, dated September 8, 1966, as previously mentioned. He told them he had drawn the contracts and the deeds as instructed by the parties, and knew of no trust agreement with respect thereto. He further advised counsel that he saw no reason to disqualify himself, and counsel at least impliedly assented thereto. He subsequently disqualified himself because on reflection he had concluded that his connection with the 1966 transaction might in some way give the appearance that he had acquired some knowledge which would prevent his impartial disposition of the issues before him.
We recognize and appreciate appellant's concern over the "timing" of the disqualification since Judge Kimmelman had already rendered a letter opinion in his favor. The disqualification ultimately led to divergent opinions, which end result could reasonably have been anticipated and, therefore, Judge Kimmelman should have disqualified himself only if that course of action was clearly required at that point in the case. In other words, he might better have disqualified himself as soon as he became aware of his connection with the matter.
However, we have reviewed the circumstances surrounding the disqualification and find no abuse of discretion on Judge Kimmelman's part warranting reversal. While we do not believe disqualification was required under R. 1:12-1 (N.J.S.A. 2A:15-49), nevertheless he had sufficient association with the transactions at issue which could give the appearance of judicial impropriety. We are certain he disqualified himself simply out of an overabundance of caution.
Having determined that the disqualification should not result in a reversal, there is no substance to appellant's contention that Judge Kimmelman's orders referring the *50 matter to Judge Antell and granting reargument were tantamount to granting respondents a new trial. No formal judgment having been signed by Judge Kimmelman, he had the inherent power to reconsider his views and do whatever was required to accomplish justice between the parties. See State v. Wolak, 33 N.J. 399 (1960), cert. den. 365 U.S. 822, 81 S.Ct. 710, 5 L.Ed.2d 701 (1961).

II

THE DISMISSAL OF THE COMPLAINT AT THE END OF APPELLANT'S PROOFS.
In determining motions for involuntary dismissal made at the close of a plaintiff's proofs, trial judges have been instructed in Dolson v. Anastasia, 55 N.J. 2 (1969), to use the following criteria:
In the case of motions for involuntary dismissal, the test is, as set forth in R. 4:37-2(b) and equally applicable to motions for judgment, whether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in * * * favor" of the party opposing the motion, i.e., if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. Bozza v. Vornado, Inc., 42 N.J. 355 (1964); Bell v. Eastern Beef Co., 42 N.J. 126 (1964); Franklin Discount Co. v. Ford, 27 N.J. 473, 490 (1958). The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion. [55 N.J. at 5-6]
See also, Nopco Chemical Div. v. Blaw-Knox, Co., 59 N.J. 274, 282-283 (1971). The criteria set forth in Dolson and Nopco are particularly applicable to complex transactions wherein fraud or other inequitable conduct is charged because in such instances the facts are peculiarly within the possession and knowledge of the parties charged with the improper conduct.
*51 Testing the evidence by the standards outlined, we are satisfied that a prima facie case was spelled out and that the judgment of dismissal should not have been granted. The trial judge prematurely and mistakenly undertook to weigh the evidence and should have awaited the presentation of respondents' proofs, together with the cross-examination in connection therewith. Lyons v. Hartford Insurance Group, 125 N.J. Super. 239 (App. Div. 1973).
It is undisputed that Ross' assignment was made within four months of his conveyance to Silverstein as trustee. N.J.S.A. 2A:19-3 makes every preferential transfer to a creditor or person under liability for him within four months before making such assignment, while the debtor is insolvent or contemplating insolvency, void as to the assignee. N.J.S.A. 2A:19-14 gives the assignee the status of a judgment creditor who has levied against the assignor and his property as of the date of the assignment. See, to the same effect, N.J.S.A. 12A:9-301(3) when dealing with like situations under the Uniform Commercial Code; In re Brill Hardware Co., Inc., 67 N.J. Super. 289 (Cty. Ct. 1961), and Watson v. Rowley, 63 N.J. Eq. 195, 204 (Ch. 1902).
N.J.S.A. 2A:19-3 and 14 must be considered in conjunction with the provisions of N.J.S.A. 46:16-1 and N.J.S.A. 46:22-1. N.J.S.A. 46:16-1 permits instruments affecting the title to realty, such as the alleged partnership agreement of 1967, to be recorded in the county recording office of the county wherein the realty is located. N.J.S.A. 46:22-1 makes every recordable instrument void as against subsequent judgment creditors without notice if not recorded. Zwaska v. Irwin, 52 N.J. Super. 27, 35-37 (Ch. 1958).
Again, the undisputed proofs showed that the alleged partnership agreement, which supposedly was the basis for the Ross' deed to Silverstein as trustee, set forth only the year and not the month or day, and was not acknowledged *52 by the parties so it could be recorded as required by N.J.S.A. 46:16-1. The deed to Silverstein as trustee was given without consideration in July 1972  about six years after the original transaction had occurred.
In our view, the trial judge would have been amply justified to infer from all such proofs that Ross, in executing the deed to Silverstein as trustee, either preferred respondents as creditors in violation of N.J.S.A. 2A:19-3 or that it was part of an illicit agreement between Ross and respondents to preserve some of Ross' assets for him.
In addition, regardless of all the statutes herein cited and discussed, the trial judge had the inherent equitable power to find from the proofs that appellant, who represents all creditors, was not chargeable with Ross' machinations. Even if he also concluded that respondents were innocent of any wrongdoing and that appellant failed in his proofs, as between two innocent groups equity will impose the loss on the group whose act first could have prevented the loss. Cambridge Acceptance Corp. v. American Nat. Motor Inns, Inc., 96 N.J. Super. 183, 206 (Ch. 1967), aff'd 102 N.J. Super. 435 (App. Div. 1968), certif. den. 53 N.J. 81 (1968). Another maxim applies, "Equity aids the vigilant, not those who slumber upon their rights." Lang v. Hexter, 137 N.J. Eq. 100 (Ch. 1945), aff'd o.b. 138 N.J. Eq. 478 (E. & A. 1946). Under the proofs here submitted the trial judge could properly look with suspicion upon the staleness of the Ross' conveyance to Silverstein as trustee and respondents' assertions of their rights. He could reasonably infer that general creditors were misled by the Essex County Register's record which showed the realty in question to be in Ross' individual name.
When the trial judge held that appellant failed to prove Ross' insolvency he predicated it upon the principle applied in corporation insolvency cases under N.J.S.A. 14A:14-1 et seq.  namely, the inability of a corporation to meet its pecuniary liabilities as they mature, by means *53 of either available assets or an honest use of credit. See Sokol v. Fidelity Union Trust Co., 138 N.J. Eq. 429 (E. & A. 1946); Trust Co. v. Trustees of Wm. F. Fisher & Co., 67 N.J. Eq. 602, 604 (E. & A. 1905). But N.J.S.A. 2A:19-3, as previously indicated, does not call for such proofs. The preferred test, in cases like the one at bar, is the one applied under the Fraudulent Conveyance Act, N.J.S.A. 25:2-8, or the Uniform Commercial Code, N.J.S.A. 12A:1-201, or the Federal Bankruptcy Act, 11 U.S.C.A. § 1 (19). Under the latter statutes one is insolvent, generally speaking, when he cannot pay his debts as they become due from the present fair saleable value of his assets. Again, the proofs here met this test on insolvency in the light of Ross' own sworn assignment, the testimony of his own certified public accountant and respondents' statement in answer to appellant's requested admissions that Ross was not insolvent "as trustee." It was reasonably inferable that Ross was insolvent, or contemplating it, and was preferring respondents as his creditors.
Finally, we turn to what we believe mandates a reversal, regardless of any other reasons, because the trial judge permitted Ross to invoke his Fifth Amendment privilege against self-incrimination. Evid. R. 24 (N.J.S.A. 2A:84A-18) defines "incrimination" and sets forth when the Fifth Amendment privilege may be invoked by a witness. Whether it is properly invocable is often a difficult and sensitive problem for the trial judge. However, it is crystal clear that the decision must be made by the trial judge, and it is not invocable on the naked statement of the witness that the answer will tend to incriminate him. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); In re Addonizio, 53 N.J. 107, 116-117 (1968); In re Boyd, 36 N.J. 285, 286 (1962); In re Boiardo, 34 N.J. 599, 602 (1961); State v. DeCola, 33 N.J. 335, 350 (1960); In re Pillo, 11 N.J. 8, 19 (1952). Furthermore, it is mandatory that the witness, not *54 his counsel, reveal sufficient facts in support of his claim of privilege to enable the trial judge to decide the merits of his claim.
Ross gave no basis for his claim of privilege and the trial judge sought none. We should not have to speculate on what Ross' answers would have been if compelled to respond to proper questions. He, better than anyone else, was in possession of information which, if believed by the trial judge, could perhaps be dispositive of the issues involved. If it eventuates that his claim of privilege is inquired into by the trial judge and ultimately sustained, then we suggest that the trial judge could properly infer that his answers would be unfavorable to respondents. Costanza v. Costanza, 66 N.J. 63 (1974); Mahne v. Mahne, 66 N.J. 53 (1974).
For the reasons herein stated, the judgment of dismissal is reversed and the matter remanded for a new trial.
NOTES
[1] of Property Within 4 Months of Assignment to Give Preference Void; Recovery of Property
If any person being insolvent or in contemplation of insolvency shall, within 4 months before the making of a general assignment, and with the intention of preferring any creditor or person under liability for him, mortgage, pledge, assign, pay or transfer any of his property, or procure or suffer any of his property to be taken, attached or levied upon, or any lien or encumbrance to be acquired thereon by legal process or otherwise, such preferential transaction shall be void as against the assignee. The assignee may recover the property given by way of preference, or the value thereof, from the person so receiving the same or so benefited thereby.